Filed 6/6/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B270940 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. TA137412) |
| ELIJAH JOE RUFFIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John Cheroske and Kelvin D. Filer, Judges. Reversed.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Zee Rodriguez and Corey J. Robins, Deputy Attorneys General, for Plaintiff and Respondent.

By information, appellant Elijah Joe Ruffin was charged with corporal injury to a cohabitant (Pen. Code, § 273.5, subd. (a))[1] and assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)), based on a single alleged assault on Katisha E. It was also alleged that he had suffered two prior strike convictions (§§ 667, subd. (d), 1170.12, subd. (b)) and had served two prior prison terms (§ 667.5, subd. (b)).[2]

In the master calendar court, on the date set for trial, appellant exercised his right to represent himself under *Faretta v. California* (1975) 422 U.S. 806, after the court indicated it would find good cause to continue the trial because appellant's appointed counsel was engaged in another trial. Before the court granted the *Faretta* request, appellant initialed and signed a written *Faretta* advisement form. Thereafter, appellant represented himself at trial before a different judge, and a jury convicted him of both counts. The trial court found the strike and prior prison term allegations true, struck one strike at sentencing, and sentenced appellant to total term of eight years in state prison.

On appeal, appellant contends that the master calendar court failed to adequately advise him of the dangers and disadvantages of self-representation. We agree. The court's inquiry consisted of asking whether appellant initialed and signed the form (he did) and whether

---

[1]     Unspecified statutory references will be to the Penal Code.

[2]     The alleged strikes were prior convictions of forcible rape (§ 261, subd. (a)(2)) and criminal threats (§ 422, subd. (a)).

he had any questions (he did not).  The court did not ascertain on the record that defendant read and understood the written *Faretta* form. The court also failed to inquire about ambiguities in appellant's responses regarding his understanding of the nature of the charges against him.  And nothing in the record—not the oral proceedings or the written *Faretta* form—advised defendant of the penal consequences of conviction—27-years-to-life in state prison.  Considering all these circumstances and reviewing the entire record de novo, we conclude that appellant's *Faretta* waiver was invalid, because the master calendar court's inquiry about the *Faretta* form and the remainder of the record fail to adequately demonstrate that that appellant understood the dangers and disadvantages of representing himself consistent with established case authority.  Therefore, we reverse the judgment.[3]

## TRIAL EVIDENCE

Katisha E. testified that she began dating appellant in 2015 and moved into his home in March of that year.  On April 2, 2015, she awoke  around 2:00 a.m. when she heard appellant searching through her purse.  Appellant accused Katisha E. of being a prostitute, and struck and choked her, resulting in swelling and redness to her right eye, bruising to her left eye, and bruises and a large bump to her right shoulder.  Katisha E. moved to her stepmother's house that night but

---

[3]     Because we reverse on this ground, we need not discuss appellant's other contentions.

did not report the incident to the Los Angeles County Sheriff's Department until April 5, 2015.

## *FARETTA* PROCEEDINGS

On September 30, 2015, the last day for trial, appellant's assigned alternate public defender was engaged in trial in another case. In the master calendar department, a substitute alternate public defender asked the court to continue the case until October 6, when appellant's assigned attorney would be finished with the other trial. The court asked appellant, "You give up your right to go to trial today and agree to October 6 or not?" When appellant replied "no," the court stated that it would find good cause to continue the trial.

The alternate public defender then informed the court that appellant wanted to start the trial and proceed in pro. per. The court responded, "You are not that stupid. You have one of the best lawyers in the county." Appellant stated, "You can't keep me in jail for allegations. I have rights. You are unconstitutionally keeping me in prison. You are violating my rights to a speedy trial." The court told appellant, "don't talk to me anymore. Put him back. Any family here?" Appellant's father stated that he was present. The court said, "Maybe you can talk to him. He wants to commit suicide. He has a good lawyer. He doesn't know how to be a lawyer. If he wants to, I will let him. If you want to talk to him, it's up to you. You want to talk to him?" The father replied, "I can talk to him but he wants a speedy

4

trial." The court stated, "Okay. Thanks for helping me. We will pass this." The court then took a recess.

The court provided appellant with a copy of a document later described by the court as "the pro. per. policy memorandum of Local Rule 6.41,"[4] as well as a written advisement and waiver of right to counsel form. On the waiver form, appellant checked the boxes advising him of, among other things, his right to counsel, his right to represent himself, and a lengthy, detailed list of dangers and disadvantages of self-representation. In the portion of the form regarding the charges, appellant checked the box indicating that he understood he was "charged with the following crime(s)," but the space for listing the charges was left blank. He checked the box stating that he knew "the crime(s) with which you are charged (is) (are) (general) (specific) intent crime(s)," but he failed to circle either. He also checked boxes indicating that he knew what facts had to be proved before he could be found guilty and knew the legal defenses. Nothing in the form advised him of the penal consequences of conviction. Because he was eligible for treatment as a third-strike defendant, with two prior prison terms alleged alleged, he was subject to a possible sentence of 27 years to life in state prison.[5] He checked boxes affirming that he understood the

---

[4] The memorandum is not in the record. Neither side discusses its contents in arguing whether appellant's *Faretta* waiver was valid. Rather, both rely on the written waiver form and the record of oral proceedings.

[5] Neither of appellant's charged offenses, which were committed in a single violent incident, was a serious or violent felony. Nonetheless, upon conviction of either or both of those crimes, and a true finding of his two

court's recommendation that he not represent himself and that it remained his wish to represent himself. Finally, he signed and dated the form, certifying: "I have read, understood and considered all of the above warnings included in this petition, and I still want to represent myself. I freely and voluntarily give up my right to have a lawyer represent me."

When the court reconvened, the following proceedings occurred:

"THE COURT: Recalling People vs. Ruffin. I have documents by Mr. Ruffin. You understand you are requesting to go to trial today and to represent yourself. Is that your wish?

"THE DEFENDANT: Yes.

"THE COURT: You had an opportunity to read the documents submitted to you. Those were the pro. per. policy memorandum of Local Rule 6.41. Did you read that?

"THE DEFENDANT: Yes.

"THE COURT: Did you understand it?

---

alleged strikes, he would not be eligible for sentencing as if he was a second strike defendant under section 667, subdivision (e)(2)(C). One of defendant's alleged prior strikes was a conviction of forcible rape under section 261, subdivision (a)(2). Such a crime is a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b). Under section 667, subdivision (e)(C)(iv)(I), a defendant who has suffered a prior conviction of such an offense is exempted from treatment as a second strike defendant, even if the present crimes are not serious or violent. (See Couzens & Bigelow, California Three Strike Sentencing (Rutter Group 2016) § 7:2, pp. 7-18 to 7-19.) Therefore, if appellant were convicted of one or both of the charges against him, and if both alleged strikes were found true, he was subject to third strike sentencing. In addition, if the section 667.5, subdivision (b) priors were found true, appellant could possibly be sentenced to an additional two years. Thus, we describe the maximum possible sentence if appellant were convicted and all his priors were found true as 27 years to life.

6

"THE DEFENDANT: Yes.

"THE COURT: I am holding a document entitled Advisement of Waiver of Right to Counsel of 4 pages. On the right-hand side it has initials E.R. Did you put that in there?

"THE DEFENDANT: Yes.

"THE COURT: That stand for Elijah Ruffin?

"THE DEFENDANT: Yes.

"THE COURT: Is that your signature?

"THE DEFENDANT: Yes.

"THE COURT: You have any questions about anything before I send you to trial forthwith?

"THE DEFENDANT: No.

"THE COURT: Okay. Sent to Department C, Judge Filer for trial today."

When the case was called that morning in the trial department, the prosecutor stated his appearance, and the trial court noted that appellant was representing himself. Appellant replied: "Really I don't want to represent myself pro per. But I have no choice. I've been in prison. I wanted a speedy trial. . . . I really would like someone with some type of legal responsibility to represent me because now I have to ask for a couple days to go over this to build a defense for me." The court replied, "All that should have been taken care of in Department D. Today is day ten of ten. . . . [¶] I'm confident you have been granted pro per status. So we're here and ready to proceed with the trial, and I intend on going through with the trial." Appellant stated, "I had no time to go over any paperwork, so if I can ask for some time to go over paperwork, and come back [at] a later date so I can have a defense. This is the first time I've seen paperwork regarding this case at all."

7

The prosecutor replied that appellant had "indicated he was ready today." Appellant stated, "And what I mean by ready . . . I was ready to go to trial to defend myself with some type of legal help." The court denied appellant's request, stating, "No, this has already been litigated and you can't play games with the court system. I have a waiver form that has been initialed by you and signed by you indicating that you have been properly advised and that you want to represent yourself. Once that determination was made by Judge Cheroske he granted you that right, so the case was sent here for trial."

The trial court noted that it would take the rest of the day to pick a jury, and that appellant would have an opportunity to read any relevant reports before testimony began the next day. The court also advised appellant that he would not receive any special treatment and that he would receive a fair trial. The court added, "So you're here representing yourself; is that correct?" Appellant replied, "Yes, I am." The court briefly explained the procedures for picking a jury, bifurcated the trial on appellant's alleged prior convictions, and at the prosecutor's urging again advised that appellant would receive "no special treatment and no special privilege. . . . All the rules of evidence must be followed and observed and the rules of court decorum as well." Appellant affirmed that he understood.

## DISCUSSION

Appellant contends the master calendar court erred by allowing him to represent himself without first determining whether he

knowingly and intelligently waived his right to counsel. For the reasons discussed below, we agree.

"'A criminal defendant has a right, under the Sixth Amendment to the federal Constitution, to conduct his own defense, provided that he knowingly and intelligently waives his Sixth Amendment right to the assistance of counsel. [Citations.] A defendant seeking to represent himself "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' [Citation.]" [Citation.] "No particular form of words is required in admonishing a defendant who seeks to waive counsel and elect self-representation." [Citation.] Rather, "the test is whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case." [Citations.]' [Citation.] Thus, '[a]s long as the record as a whole shows that the defendant understood the dangers of self-representation, no particular form of warning is required.' [Citations.]" (*People v. Burgener* (2009) 46 Cal.4th 231, 240–241 (*Burgener*).) "'On appeal, we review the entire record, including proceedings after the invocation of the right to self-representation, and determine de novo whether the defendant's waiver of the right to counsel was knowing and voluntary.' [Citations.]" (*People v. Bush* (2017) 7 Cal.App.5th 457, 469 (*Bush*).)

Although no specific inquiry is required, prior California decisions have discussed the types of warnings that are sufficient. Those warnings "'include the defendant's inability to rely upon the trial court

9

to give personal instruction on courtroom procedure or to provide the assistance that otherwise would have been rendered by counsel. . . .' [Citation.] The defendant 'should at least be advised that: self-representation is almost always unwise and that the defense he conducts might be to his detriment; he will have to follow the same rules that govern attorneys; the prosecution will be represented by experienced, professional counsel who will have a significant advantage over him in terms of skill, training, education, experience, and ability; the court may terminate his right to represent himself if he engages in disruptive conduct; and he will lose the right to appeal his case on the grounds of ineffective assistance of counsel. [Citation.] In addition, he should also be told he will receive no help or special treatment from the court and that he does not have a right to standby, advisory, or cocounsel. [Citation.] [¶] While this list of issues is not exhaustive, it demonstrates that there are a number of matters the court must ask about and consider before ruling on a defendant's request to represent himself.' [Citation.]" (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 545–546 (*Sullivan*).)

In addition, we note that the court should satisfy itself that the defendant understands the nature of the charges against him, though there is a split of authority in California as to whether the court must also specifically advise the defendant of the maximum penal consequences of conviction. (See *Bush, supra,* 7 Cal.App.5th at pp. 469-474 [discussing decisions and holding advisement of penal consequences is not essential to a valid *Faretta* waiver]; compare *People v. Jackio*

10

(2015) 236 Cal.App.4th 445, 454-455 [holding that court must advise the defendant of the maximum punishment if convicted, including enhancements].) We need not enter the debate whether and to what extent a trial court is required to advise of possible penal consequences, because even if such an advisement is not mandatory, its total absence is certainly a factor to consider in determining whether the defendant's waiver was knowingly made, and in this case we rely on the entire record to conclude that the *Faretta* waiver was invalid.

Finally, "[t]he high court has instructed that courts must draw every inference against supposing that the defendant wishes to waive the right to counsel. [Citation.] It follows, as several courts have concluded, that in order to protect the fundamental constitutional right to counsel, one of the trial court's tasks when confronted with a motion for self-representation is to determine whether the defendant truly desires to represent himself or herself. [Citations.] The court faced with a motion for self-representation should evaluate not only whether the defendant has stated the motion clearly, but also the defendant's conduct and other words. Because the court should draw every reasonable inference against waiver of the right to counsel, the defendant's conduct or words reflecting ambivalence about self-representation may support the court's decision to deny the defendant's motion. A motion for self-representation made in passing anger or frustration, an ambivalent motion, or one made for the purpose of delay or to frustrate the orderly administration of justice may be denied." (*People v. Marshall* (1997) 15 Cal.4th 1, 23 (*Marshall*).)

11

In the instant case, there is no question that the master calendar court's oral comments themselves failed to adequately advise appellant of the dangers and disadvantages of self-representation. In that regard, *Burgener* is instructive. There, the defendant was represented by counsel at trial and at several post-conviction and post-appeal hearings. The case was reversed and remanded twice. The defendant asked to represent himself at a resentencing hearing after defense counsel stated his intent to request another continuance. "Promptly upon learning of defendant's interest in representing himself, the court stated, 'I think I would be remiss if I didn't advise you at least with regard to certain possible pitfalls with regard to self-representation.' Then, at the subsequent hearing, the court acknowledged that its own opinion on the matter was not determinative; '[i]t's a question of whether or not you are fully aware of the consequences of representing yourself.'" (*Burgener*, *supra*, 46 Cal.4th at p. 241.)

Our Supreme Court reasoned that, although "the trial court was aware of its duty to advise defendant of the dangers and disadvantages of self-representation . . . [¶] [t]he record concerning *defendant's understanding* of the dangers and disadvantages of self-representation . . . is rather thin. Despite the foregoing statements of intent, the court did not actually follow through and advise defendant of the 'possible pitfalls' or 'consequences' of self-representation. Instead, the court simply *assumed* that defendant was aware of them, at first declaring, 'I'm sure that you're familiar with all of the obligations and—that are concerned in this particular matter, what the consequences are.'"

12

(*Burgener, supra,* 46 Cal.4th at pp. 241-242.)  The court found the trial court's advisement "plainly insufficient to establish a knowing and intelligent waiver of the right to the assistance of counsel."  (*Id.* at p. 242.)  *Burgener* emphasized that a request for self-representation in a limited proceeding, such as "the trial court's reconsideration of his application to modify the verdict . . . differs markedly from a trial on the merits, which involves voir dire of potential jurors, the examination and cross-examination of witnesses, and jury instructions."  (*Ibid.*)

Here, the master calendar court's oral comments advised appellant, in substance, that it was unwise for him to represent himself: "You are not that stupid"; "He wants to commit suicide.  He has a good lawyer.  He doesn't know how to be a lawyer."  But the court did not give any other oral advisements.  Respondent relies on the written waiver form to argue that appellant's waiver was knowing and voluntary.  We disagree.

In granting appellant's request to represent himself, the master calendar court declared:  "You understand you are requesting to go to trial today and to represent yourself.  Is that your wish?"  Appellant replied, "Yes."  The court noted that appellant "had an opportunity to read the documents submitted to" him.  The court then referred specifically to "the pro. per. policy memorandum of Local Rule 6.41," and asked if appellant read and understood it.  Appellant replied yes to both questions.  Next, the court stated that it was "holding a document entitled Advisement of Waiver of Right to Counsel of 4 pages."  In response to the court's inquiries, appellant affirmed that he had

13

initialed and signed the form. The court then asked, "You have any questions about anything before I send you to trial forthwith?" When appellant answered he did not, the court ordered the case out for trial. The court did not affirmatively ascertain on the record whether appellant actually read and understood the advisements contained in the waiver form, and whether, with such understanding, appellant wished to waive his right to counsel and represent himself.

Further, appellant's completed form was not entirely clear regarding his knowledge of the charges against him. In the portion of the form regarding the charges, appellant checked the box indicating that he understood he was "charged with the following crime(s)," but the space for listing the charges was left blank. He also checked the box stating that he knew "the crime(s) with which you are charged (is) (are) (general) (specific) intent crime(s)." But without appropriate editing, his mere checking the box suggested that, in fact, he did not know whether the charges required general or specific intent. On the other hand, he checked boxes indicating that he knew what facts had to be proved before he could be found guilty and knew the legal defenses. Despite these apparent ambiguities, the master calendar court made no inquiry in an attempt to assure itself that appellant actually understood the charges. We do not mean to suggest that a court must make a detailed inquiry into a defendant's knowledge of specific elements of the charges against him. And we certainly understand the exigencies of running a busy master calendar court. But when a completed *Faretta* waiver form is blank as to the specific charges and confusing as to the

14

defendant's understanding of the intent requirements, yet reflects that the defendant purports to know what facts must be proved for conviction and knows the legal defenses, at least some inquiry would be helpful to ensure that the defendant truly understands the nature of the charges against him. Further, neither the court nor the form advised defendant of the penal consequences of conviction—up to 27 years to life in state prison—and nothing in the record on appeal reveals such an advisement. Reviewing this record de novo and as a whole, we cannot say that the waiver form, coupled with the court's oral inquiry, satisfactorily demonstrates that appellant's request to represent himself was knowing and voluntary.

Nor can we say that the advisements appellant received in the trial court cured these deficiencies in the record. Because the waiver occurred in the master calendar court, the trial court merely advised appellant, in substance, that he would receive no special treatment, and that he must comply with the rules of evidence and court decorum. These advisements do not fill the holes left by the record of the master calendar proceedings.

The decisions on which respondent relies—*People v. Blair* (2005) 36 Cal.4th 686 (*Blair*), overruled on other grounds in *People v. Black* (2014) 58 Cal.4th 912, and *People v. Miranda* (2015) 236 Cal.App.4th 978 (*Miranda*) —are distinguishable. In *Blair*, the court rejected the defendant's claim that his *Faretta* waiver was not knowing and voluntary. The court explained that "the record is replete with instances in which defendant was warned of the dangers and

15

disadvantages of self-representation, both orally and in writing, in both the municipal and superior courts.  For example, defendant was orally warned that representing himself was unwise, that the prosecutor was an experienced lawyer who would have an advantage over him, that as an in propria persona defendant he would receive no special consideration from the court, that he would be unable to claim ineffective assistance of counsel on appeal, that as his own attorney it would be difficult to be objective, and that a death penalty case involved special risks.  These oral advisements sufficed to apprise defendant of the dangers and disadvantages of self-representation." (*Blair*, *supra*, 36 Cal.4th at p. 708.)  Some of the advisements were given only in the written waiver form the defendant signed.  The court reasoned that the failure to orally advise the defendant about "these latter warnings . . . does not necessarily invalidate defendant's waiver, particularly when, as here, we have no indication that defendant failed to understand what he was reading and signing.  To the contrary, defendant demonstrated his ability to read and write in numerous pro se filings before the court.  Defendant also appeared to be of at least normal intelligence and spoke articulately in court." (*Id.* at p. 709.)  Further noting that the defendant had "demonstrated considerable legal knowledge, and had represented himself at his previous trial on the attempted murder charges involving the same underlying events," the court concluded that the record supported the conclusion that the *Faretta* waiver was knowing and voluntary.  (*Ibid.*)

16

Citing *Blair, Miranda* observed that "[w]hile it is preferable to question a defendant about his responses to a written waiver form, the failure to do so does not necessarily invalidate a waiver where there is no indication the defendant did not understand what he was reading and signing." (236 Cal.App.4th at p. 986.) In *Miranda,* after the defendant initialed and signed the waiver form, he affirmed that he wanted to represent himself, and answered yes when asked "whether, by initialing and signing the form, he was telling the court that he understood he had the constitutional right to an attorney and whether he understood the dangers and disadvantages of representing himself." Finally, "[t]he court then asked: 'And knowing all of those consequences and what can happen to you, and the fact that you will not be given any special consideration, and I personally advise you not to represent yourself, you still want to represent yourself?'" (*Ibid.*) The defendant replied that he did, and the court granted the *Faretta* waiver.

On appeal, the appellate court reasoned in relevant part: "This was not a case where the trial court relied solely on the waiver form. After Miranda signed the form the trial court asked him whether by signing and initialing the form he had in fact read and understood it. Miranda answered yes. The court also asked Miranda whether he still wanted to represent himself despite his knowledge, including the loss of his right to counsel and the court's advice that he not represent himself. Miranda again answered yes. His statements to the court were clear and direct and showed a strong desire to represent himself." (236 Cal.App.4th at p. 986.)

17

In the present case, unlike *Blair,* the record is not "replete with instances in which defendant was warned of the dangers and disadvantages of self-representation, both orally and in writing, in both the municipal and superior courts." (*Blair, supra,* 36 Cal.4th at p. 708.) Indeed, the record reveals that the court failed to engage in even the minimal inquiry undertaken by the court in *Miranda* to ensure that appellant's decision to represent himself was knowing and voluntary.

Neither *Blair* nor *Miranda* stand for the proposition that when a defendant signs a written *Faretta* waiver form, the court need only conduct the kind of perfunctory proceeding that occurred in the master calendar court here, in which the court merely advised appellant that self-representation was unwise, and asked whether he initialed and signed the form and whether he had any questions. Rather, even when a waiver form is completed, the court's duty remains to ensure that the defendant's waiver of the right to counsel is knowing and voluntary. The record as a whole must demonstrate ""that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case."" (*Bush, supra,* 7 Cal.App.5th at p. 469; compare *id.* at p. 478 [record showed the defendant knowingly and voluntarily waived counsel where, after receiving the written waiver form, the court explained the risks, issued "repeated reminders at 10 separate hearings," and repeatedly offered to appoint a public defender at each of those hearings]; *People v. Fox* (2014) 224 Cal.App.4th 424, 426, 431, 437 [rejecting the defendant's claim that he did not knowingly and intelligently exercise his right to self-

representation, despite the trial court's incorrect advice about one of the counts, because after receiving the signed waiver form, the trial court explained the disadvantages of self-representation and inquired into the defendant's educational and psychological background]; *People v. Conners* (2008) 168 Cal.App.4th 443, 454-455 [relying not only on the written *Faretta* waiver form, but also on the "extensive colloquy" before granting the *Faretta* motion and the "shorter colloquy with the trial judge at the start of the trial," to conclude "'the record as a whole'" showed the defendant "'understood the disadvantages of self-representation'"].)

In the present case, the record does not meet that test. The master calendar court failed to ascertain on the record that defendant actually read and understood the written *Faretta* form. The court failed to inquire about ambiguities in the form regarding defendant's understanding of the nature of the charges against him. Nothing in the record—not the oral proceedings or the written *Faretta* form—advised defendant of the significant possible sentencing consequences of conviction. Under these circumstances, reviewing the record de novo, we do not have confidence that appellant was adequately made aware of the risks and disadvantages of self-representation before his request to represent himself was granted. And nothing that later occurred in the trial court cures these deficiencies.

"[W]hen the record demonstrates that the trial judge neglected to advise the defendant of the dangers and disadvantages of self-representation as required by *Faretta* when the waiver is taken, but the

19

waiver of the right to counsel was voluntary, the courts have split on the standard of reversible error:  some have determined that the error is structural and reversible per se; others have declared the error must be found prejudicial under the *Chapman v. California* (1967) 386 U.S. 18, 24 test unless the error is harmless beyond a reasonable doubt." (*Sullivan, supra,* 151 Cal.App.4th at p. 551, fn. 10; see *Bush, supra,* 7 Cal.App.5th at p. 477.)  Assuming that inadequate *Faretta* advisements can be harmless in some circumstances where the waiver of counsel is nonetheless voluntary, the record here fails to demonstrate beyond a reasonable doubt whether appellant would have decided to represent himself had he been properly advised.

Upon appearing in the trial department after the inadequate inquiry by the master calendar court, appellant told the trial court, "I don't want to represent myself pro per.  But I have no choice.  I've been in prison.  I wanted a speedy trial. . . .  I really would like someone with some type of legal responsibility to represent me because now I have to ask for a couple days to go over this to build a defense for me."  When the court replied that "[a]ll that should have been taken care of in Department D" and that the case would proceed to trial, appellant protested that "I had no time to go over any paperwork, so if I can ask for some time to go over paperwork, and come back [at] a later date so I can have a defense.  This is the first time I've seen paperwork regarding this case at all. . . .  [W]hat I mean by ready meant I was ready to go to trial to defend myself with some type of legal help."  Given appellant's reluctance to represent himself in the trial department, it cannot be

20

said, beyond a reasonable doubt, that had he been properly advised of the dangers and disadvantages of self-representation he would have chosen to represent himself. Rather, the record indicates that appellant's request for self-representation was "made in passing anger or frustration" about the need to continue the trial and that appellant immediately expressed "ambivalence about self-representation." (*Marshall, supra*, 15 Cal.4th at p. 23; see *Bush, supra*, 7 Cal.App.5th at p. 469 [on appeal, we examine the "'entire record, including proceedings after the invocation of the right to self-representation, [to] determine . . . whether the defendant's waiver of the right to counsel was knowing and voluntary.'"].)

For the foregoing reasons, we conclude that appellant's request for self-representation was not knowing, intelligent, and voluntary.

## DISPOSITION

The judgment is reversed.

**CERTIFIED FOR PUBLICATION**

WILLHITE, J.

I concur:

COLLINS, J.

**EPSTEIN, P. J., Concurring in the Judgment.**

The underlying facts in this case are recounted in the majority opinion. Briefly summarized, they show that defendant had been charged with corporal injury to a cohabitant and assault with force likely to cause great bodily injury. He pleaded not guilty to these charges and a deputy alternate public defender, Leslie Kelley, was appointed to represent him. On September 30, 2015, the case was in the criminal master calendar department for assignment to a trial department and trial that day. Defendant appeared with another alternate public defender who explained that Ms. Kelley was engaged in trial. The deputy alternate public defender who made the appearance asked that the case go over to October 6, 2015, by which time Ms. Kelley would be available to try the case. The delay amounted to four court days. When asked if he agreed to the postponement defendant replied "no." The court expressed willingness to postpone to October 6 for good cause. At that point the deputy alternate public defender informed the court that defendant "wants to go pro per and he wants to start today."

The trial court responded, addressing defendant, "You are not that stupid. You have one of the best lawyers in the county." Defendant replied, "You can't keep me in jail for allegations. I have rights. You are unconstitutionally keeping me in prison. You are violating my rights to a speedy trial." The trial court asked if any family member was present in court, and defendant's father announced his presence. Addressing the father, and in defendant's presence, the court said,

"Maybe you can talk to him. He wants to commit suicide. He has a good lawyer. He doesn't know how to be a lawyer. If he wants to I will let him. If you want to talk to him, it's up to you. You want to talk to him?" Defendant's father replied that he could talk to defendant but that defendant "wants a speedy trial." The trial court thanked the father and passed the case until later in the calendar.

The court called the case back after a recess. By then defendant had been provided with the form for waiver of counsel. With a single exception, he checked boxes verifying that he had read and understood the rights he would be giving up and the dangers of self-representation, including the court's advice that he not give up his right to representation by counsel. Defendant acknowledged having read, initialed and signed the waiver form, upon which the case was transferred to another court for trial. (A copy of the form, as completed and initialed by defendant, is appended here as Attachment A.) He was not again asked if he understood what he was waiving.

The single exception on the completed form is with respect to the "Charges and Consequences" part of the form, questions 4 through 7. Question 4 of the form states, "I understand that I am charged with the following crimes(s)," followed by two blank lines to be filled in. Defendant did not fill them in. But he checked the "yes" box for the next three questions, which asked if he knew the crimes which were charged, including whether they were general or specific intent crimes, knew what had to be proven for him to be found guilty, and knew the legal defenses to those charges.

23

What is missing at this juncture and elsewhere on the form, is an acknowledgment that defendant had been advised of the punishment he faced if convicted of the charges. The maximum punishment was complicated in this case because of enhancements based on defendant's prior record, including a prior prison term. There is nothing in the record that states or incorporates some document that states, the maximum prison time that could be imposed.

But for that omission, I see no basis for reversal.

Once in the trial courtroom defendant asked for more time to prepare; that was denied because he had refused to waive time and had demanded to go to trial that day. The waiver form acknowledged that he had been specifically warned that "no continuance will be allowed without a showing of good cause, and that such requests made just before trial will most likely be denied." (Item 3F on the waiver form.) The case proceeded to trial, which resulted in defendant's conviction of the charges against him. There is no record that defendant sought to withdraw his waiver of counsel or asked that counsel be appointed to defend him. (He was represented by counsel in proceedings following return of the guilty verdicts.)

The majority find fault with the trial court's failure to ask defendant if he understood what rights he was waiving. I do not agree. He initialed specific references to waiving rights some 16 times, and he dated and signed the final substantive paragraph, which reads "I hereby certify that I have read, understood and considered and voluntarily give up my right to have a lawyer represent me."

24

Barring some showing that defendant was unable to understand what he was signing or that he had changed his mind about self-representation, this ought to be, and in my opinion is sufficient with respect to the initialed items. The court was not required to remonstrate with defendant about his choice so long as it was reasonably satisfied that defendant understood what he was giving up and the risks of self-representation. The printed form sets most of this out in plain language, avoiding legalese. Beyond that, the court made it clear that it believed defendant was making a mistake: it warned that waiver of counsel was unwise and more ("You are not stupid"), that in doing so defendant was likely to be convicted ("he wants to commit suicide"; "[h]e doesn't know how to be a lawyer"), but defendant persisted. The trial court's phrasing may have been inelegant, but it was clear and pointed. "While it is preferable to question a defendant about his responses to a written waiver form, the failure to do so does not necessarily invalidate a waiver where there is no indication the defendant did not understand what he was reading and signing." (*People v. Miranda* (2015) 236 Cal.App.4th 978, 986, and cases cited.)

It surely would be unusual if defense counsel had not advised defendant of the punishment he was facing if convicted on all charges. The law is not yet settled on the extent to which the record must show that a defendant was informed of the punishment he or she faced if convicted. (Compare *People v. Bush* (2017) 7 Cal.App.5th 457, 468–473; *People v. Sullivan* (2007) 151 Cal.App.4th 524, 545; *People v. Jackio* (2015) 236 Cal.App.4th 445, 453; *People v. Conners* (2008) 168

25

Cal.App.4th 443, 455.)  The correct rule, in my opinion, is that the record must reflect that the defendant is aware of the magnitude of the penalty, at least in terms of prison time, that may be imposed if found guilty of the charges.  Since it does not, I agree that reversal is required.


EPSTEIN, P. J.

**ATTACHMENT A**

· 00041

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF LOS ANGELES**

PLAINTIFF:

PEOPLE OF THE STATE OF CALIFORNIA

DEFENDANT:

ELIJAH RUFFIN

**ADVISEMENT AND WAIVER OF RIGHT TO COUNSEL**
**(Faretta Waiver)**

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

**SEP 30 2015**

Sherri R. Carter, Executive Officer/Clerk
By _____ Michael DeBose Deputy
Michael DeBose

CASE NUMBER:

DEPT:

Fill out this form if you wish to proceed in propria persona (act as your own attorney). Initial the box for each applicable item only if you understand and agree with it, and sign and date the form where it says "DEFENDANT'S SIGNATURE" on page 4. If you have any questions about anything on this form, ask the judge.

## CONSTITUTIONAL RIGHTS

Initial:

1. I am the defendant in the above-entitled case, and I certify to the Court that I can read and write. I understand that my constitutional rights including the following:

   A. **Right to An Attorney** — I understand that I have the right to be represented by an attorney at all stages of the proceedings and, if I do not have funds to employ an attorney, one will be appointed for me by the Court at no cost.

   B. **Right to A Speedy Trial And A Jury Trial** — I understand that I have a right to a speedy trial and a public trial by a jury of twelve citizens.

   C. **Right to Subpoena Witnesses and Records** — I understand that I have the right to the reasonable use of the process of the Court to subpoena any witnesses or any records that I may need in my defense.

   D. **Right to Confront And Cross-Examine Witnesses** — I understand that I have the right to confront in open court all witnesses who will be called to testify against me, and I have the right to cross-examine those witnesses at the time of trial.

   E. **Right Against Self-Incrimination** — I understand that I have the right to testify at my trial, but that I cannot be compelled to testify at the trial unless I so desire.

   F. **Right to be Released on Bail** — I understand that I may have the right to be admitted to liberty on reasonable bail pending the trial.

   G. **Right to Self-Representation** — I understand that I have a right to self-representation and may waive my right to counsel. I further understand that if I am permitted to represent myself, I will have to conduct my own defense WITHOUT THE ASSISTANCE OF A LAWYER.

## BACKGROUND

2. In support of my petition to proceed in propria persona (also referred to as "pro per"), I offer the Court the following biographical information:

   A. Age: _31_  Year of Birth: _1983_

   B. Education:

      (1) High School Attended: _____

      (2) High School Graduate:  ☒ Yes   ☐ No

Page 1 of 4

5/2004

28

(3)  Additional Formal Education (if any):

_____

_____

(4)  Legal Education (if any):

_____

_____

C.  Employment Experience:

_____

_____

_____

D.  I have previously been granted the right to proceed in propria persona in the following criminal matters:

| Case | Court | Year | Result |
|------|-------|------|--------|
| Case | Court | Year | Result |
| Case | Court | Year | Result |

**DANGERS AND DISADVANTAGES TO SELF-REPRESENTATION**                                    <u>Initials</u>

3.  I understand there are many dangers and disadvantages in representing myself.    Among those disadvantages of not having an attorney are the following:

A.  I understand that if I am permitted to represent myself it will be necessary for me, WITHOUT THE ASSISTANCE OF A LAWYER OR THE COURT, to follow all the technical rules of substantive law, criminal procedure, and evidence.

B.  I understand the case against me will be handled by a prosecutor who is an experienced trial attorney, and that I will not be entitled to special consideration or assistance by the Court during the course of the trial.

C.  I understand that if I am permitted to represent myself, it will be necessary for me WITHOUT THE ASSISTANCE OF A LAWYER, to conduct my own trial consisting of, but not limited to: making pretrial motions; selecting a jury; making an opening statement; cross-examining the witnesses for the prosecution; subpoenaing and presenting my own witnesses; making appropriate objections and motions during the course of the trial; preparing and presenting proposed jury instructions to the Court; making the final argument; making appropriate motions after trial; representing myself at the time of the probation and sentencing hearing in the event of conviction.

D.  I understand that I cannot and will not receive any help or special treatment from the Court.

E.  I understand that if I ask for any additional money over the initial amount granted by the Court, I will be required to keep and show the Court receipts for anything I have purchased with the money that had previously been granted to me.

F.  I understand that because of my custodial status, it will be difficult for me to contact witnesses and investigate my case.  I understand that I will have limited access to a telephone, which will make preparations for trial more difficult, and that I will be provided no more access to the law library than any other pro per inmate.

G.  I understand that no continuance will be allowed without a showing of good cause, and that such requests made just before trial will most likely be denied.

H.  I understand that depending on the stage of my case, if I ask to give up my pro per status and request counsel to handle my case, the Court may deny this request and I may have to proceed with trial without an attorney.

5/2004

29

I. I understand that in conducting the trial, I will be limited in my movements in the courtroom. All documents, for example, will be handed to witnesses when necessary through the bailiff, I will be required to remain in my seat at counsel table and will not have free access in the courtroom.

J. I understand that I must not abuse the dignity of the Court. I understand that the Judge may terminate my right to self-representation in the event that I engage in serious misconduct or obstruct the conduct and progress of the trial. I understand that if my pro per status is terminated, I may have to be represented by a lawyer, appointed by the Judge, who will then take over the case at whatever stage the case may be in.

K. I understand that if at some point an appointed attorney does take over my case, that attorney may be in a disadvantaged position and that such a disadvantage will not be considered an issue on appeal.

L. I understand that misconduct occurring outside of court may result in restriction or termination of my pro per privileges. I also understand that my pro per status will not shield me from disciplinary actions within the jail, and that I will be subject to the same disciplinary measures as all other inmates for misconduct occurring in the jail.

M. I understand in the event of a conviction and an appeal, by acting as my own lawyer, I give up and waive my constitutional right to effective assistance of counsel as a possible ground of appeal. However, if I am represented by an attorney, I may complain on appeal that the attorney did not effectively represent me.

## CHARGES AND CONSEQUENCES

4. I understand that I am charged with the following crime(s):

_____

_____

5. Do you know the crime(s) with which you are charged (is) (are) (general) (specific) intent crime(s)?

Yes ☑    No ☐

6. Do you know what facts have to be proved before you can be found guilty of the offense(s) charged?

Yes ☑    No ☐

7. Do you know what the legal defenses are to the crime(s) with which you are charged?

Yes ☑    No ☐

## COURT'S ADVICE AND RECOMMENDATION

9. I understand that it is the advice and recommendation of this Court that I do not represent myself and that I accept court-appointed counsel. I understand that if I accept court-appointed counsel, an experienced trial lawyer will be assigned to try my case. I understand that the lawyer would be able to investigate my case, file pretrial motions, and advise me on what to do.

10. I understand that this written petition to proceed propria persona will be filed and become part of the Court case file. I further understand that on any appeal that may be taken from a conviction, or upon the filing of a petition for an Extraordinary Writ, this petition will be forwarded to any court of appeal and will be considered by that court in determining whether I knowingly and intelligently waived my right to legal counsel.

11. I understand all that I have read and all that the Court has told me. It is my personal desire that I be granted permission by the Court to proceed in propria persona. I understand that by making this request I am giving up the right to be represented by a lawyer.

00044

I hereby certify that I have read, understood and considered all of the above warnings included in this petition, and I still want to represent myself. I freely and voluntarily give up my right to have a lawyer represent me.

Signed: _____ Dated: 9-30-5

DEFENDANT'S SIGNATURE

---

## INTERPRETER'S STATEMENT (If applicable)

I, having been duly sworn or having a written oath on file, certify that I truly translated this form to the defendant in the language indicated below. The defendant stated that he or she understood the contents on the form, and then initialed and signed the form.

Language: ☐ Spanish ☐ Other (specify) _____

Signed: _____ Dated: _____

COURT INTERPRETER

_____

TYPE OR PRINT NAME

5/2004