Filed 9/4/20  P. v. Johns CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B296081 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA458893) |
| v. | |
| KENNETH JOHNS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark S. Arnold, Judge.  Reversed and remanded with instructions.

Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Zee Rodriguez and Wyatt

E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.

---

## INTRODUCTION

Appellant Kenneth Johns was represented by counsel at his trial on charges of, inter alia, murdering one man and attempting to murder another. A jury convicted him on all charges. His counsel obtained a continuance of the sentencing hearing to prepare a potential motion for new trial, but decided against filing such a motion. Disagreeing with that decision, appellant made a "*Faretta* motion," i.e., a motion to represent himself. (See *Faretta v. California* (1975) 422 U.S. 806, 807 (*Faretta*).) Before allowing appellant to represent himself, the court secured appellant's confirmation that he understood his counsel was better equipped to file a new trial motion. Otherwise, the court did not advise appellant of any risk of self-representation, and appellant demonstrated no understanding of any such risk.

The court granted appellant's *Faretta* motion and continued the sentencing hearing for a second time. Appellant filed his new trial motion the same day. At the continued hearing, appellant made a request for a third continuance, which the court denied. The court also denied appellant's new trial motion. It sentenced appellant to an aggregate term of 61 years to life and imposed a restitution fine, a criminal conviction assessment, and a court operations assessment. Appellant made no argument

2

regarding his sentence and raised no objection to the imposition of the fine and assessments.

On appeal, appellant contends: (1) the trial court violated his constitutional right to counsel by allowing him to represent himself in litigating his sentence and motion for new trial without first ascertaining whether his purported waiver of his right to counsel was knowing and intelligent; (2) the court abused its discretion, in a manner amounting to a violation of several of appellant's constitutional rights, when it denied his request for a third continuance of the sentencing hearing; and (3) the court violated appellant's due process and Eighth Amendment rights by imposing the restitution fine and assessments without determining his ability to pay.

We agree with appellant's first contention, finding that the trial court's failure to advise appellant of any of the substantial risks of self-representation at sentencing prevented the court from ascertaining whether appellant knowingly and intelligently waived his right to counsel, and that the court's granting of his *Faretta* motion therefore violated that right. Though the parties disagree whether a constitutional violation of this nature is subject to harmless-error analysis, we decline to resolve this dispute, as reversal is required under each of the standards the parties advance. Accordingly, we reverse and remand for resentencing. We decline to address appellant's other contentions, but we note that appellant will have an

3

opportunity on remand to object to the imposition of any fine or assessment on the ground of inability to pay.

## PROCEEDINGS BELOW

### A. *Prosecution Case*

The People charged appellant with the attempted murder of Paul Smith (Pen. Code, §§ 187, subd. (a), 664; count one) and with an assault upon Smith with a deadly weapon, viz., a large wooden object (*id.*, § 245, subd. (a)(1); count two). In connection with the attempted murder count, the People alleged that appellant used a knife as a deadly weapon and inflicted great bodily injury. The People further charged appellant with the murder of Gerald Richard Jackson (*id.*, § 187, subd. (a); count three), alleging he caused Jackson's death by intentionally discharging a firearm. Finally, the People charged appellant with the possession of a firearm by a felon (*id.*, § 29800, subd. (a)(1); count four).

### 1. *Gerald Jackson's Murder*

On June 23, 2017, around 5:56 a.m., Los Angeles Police Department (LAPD) officers responded to the scene of a reported shooting in Skid Row. They discovered Gerald Jackson, the shooting victim, who soon died of a gunshot wound to the chest.

LAPD Detective Jonathan Vander Lee obtained surveillance videos from several cameras in Skid Row, which were played for the jury. One video showed a man shooting

4

Jackson twice around 5:52 a.m.  The shooter was wearing a black hoodie, a white shirt sticking out from underneath the hoodie, black pants, and black shoes.  Other videos showed a man in similar clothing removing a bicycle from a tent near the scene of the shooting around 5:40 a.m., appearing to retrieve an object from behind the tent soon thereafter, and concealing that object in his pocket while proceeding toward the scene of the shooting.

On July 5, 2017, while driving in Skid Row, Detective Vander Lee happened upon appellant.  Believing that appellant resembled the shooter in the video, he arranged for other officers to contact appellant while he returned to a police station to watch appellant from surveillance cameras.  In video from those cameras (which was played for the jury), appellant went to the tent from which the shooter had removed a bicycle.  Appellant was arrested after he entered the tent.

Jackson's companion, Cathy Garcia, identified appellant, whom she had known for more than 20 years, as the man in the video from the day of the shooting.  Garcia was called to a police station on the day Jackson was killed.  After leaving the station, she encountered appellant, who had a gun and was wearing what she believed was a bulletproof vest.

Two additional witnesses, each in custody at the time of trial, identified appellant as the man in the video from the day of the shooting.  Appellant's former girlfriend, Regina Davis, did so both in her trial testimony and in a recorded

5

police interview that was played for the jury. She testified she did not want to testify, but she had been served with a subpoena and had been arrested when she refused to comply with it. Andrea Johnson similarly testified that she did not want to testify. Johnson denied knowing appellant, but in a recorded police interview that was played for the jury, she identified appellant -- whom she said she had known for more than 20 years -- as the man in the video from the day of the shooting.

### 2. *Paul Smith's Attempted Murder and Assault*

Paul Smith testified that on June 19, 2017, when he was giving food to an unhoused Skid Row resident outside the hotel where he lived and worked, appellant -- a stranger to him -- abruptly stabbed him in the abdomen with a knife. Appellant tossed the knife to another man and eventually departed on a bicycle. Smith pursued appellant with a pipe, initiated a brief fight with appellant and the man to whom appellant had thrown the knife, and returned to the hotel. While Smith waited for the police at the hotel, appellant sneaked up behind him and struck him with a large wooden object. Videos of the stabbing and bludgeoning were played for the jury. Smith's stab wound required surgery.

### B. *Defense Case*

Appellant denied killing Jackson. He testified that at the time of Jackson's shooting, he was in a tent with Terrie

Smith and another woman.  In her own testimony, Terrie Smith corroborated this alibi.

Appellant also denied attacking Paul Smith.  He testified that he confronted Smith after Smith slapped a friend of his, but Smith walked away.  He implied that Smith might have been stabbed by another Skid Row resident who confronted Smith about the slap.  Smith soon reappeared and struck Charles Allen, another of appellant's friends, with a metal pole.  In his own testimony, Allen corroborated appellant's claim that Smith struck Allen with a pole.  The surveillance video also corroborated this claim.

Appellant acknowledged that he knew Johnson -- one of the prosecution witnesses who had identified him in a video from the day of the shooting, but at trial denied knowing him.  He further confirmed that he had been having frequent phone calls with his friend Willie Meyers during trial, but denied plotting with Meyers to influence witnesses' testimony.

### C. *Prosecution Rebuttal Evidence*

The People played recordings of calls placed by appellant, from jailhouse phones, to Meyers.  On one call, appellant asked Meyers to arrange for a man to attend trial the next day "so [Johnson] and them can see . . . his face," adding, "You know, a little threat."  On a later call, appellant said he was proud of Johnson for, inter alia, denying that she knew him.

7

**D. *Closing Arguments and Verdicts***

In closing, the prosecutor argued the "damning" video evidence established appellant's guilt, especially in light of the testimony from multiple witnesses identifying appellant as the man in the videos. He argued appellant had intimidated witnesses, reflecting consciousness of guilt. Relatedly, he argued Johnson had denied knowing appellant on the stand (after identifying him before trial) because she was afraid to identify him as the shooter in his presence.

Appellant's counsel urged the jury to believe appellant's denials of guilt, relying on the absence of evidence of motive and challenging the prosecution witnesses' credibility. She argued appellant had made no attempt to intimidate witnesses, explaining that he repeatedly called Meyers during trial merely to offer running commentary to a friend.

In rebuttal, a second prosecutor again emphasized the video evidence and identification testimony, and argued that Johnson had failed to identify appellant on the stand because she was afraid of him.

On October 25, 2018, the jury convicted appellant on all counts, found the murder was premeditated and deliberate, and found the allegations associated with each count true. The court scheduled a sentencing hearing for December 3.

## E. Faretta *Motion and Colloquy*

At the December 3, 2018 sentencing hearing, appellant's counsel requested a continuance to January 29, 2019, for a potential motion for new trial. The court granted the continuance. Appellant's counsel did not file a new trial motion.

At the outset of the January 29 hearing, appellant's counsel informed the court that appellant wished to represent himself. The court engaged in the following *Faretta* colloquy:

> "The court: Why would you want to do that?
>
> "[Appellant]: I have more evidence and I want to file a new trial motion.
>
> "The court: All right. Well, the trial is over. So how much of a continuance do you want?
>
> "[Appellant]: Can I get 45 days?
>
> "The court: No, it's too much. You were convicted in October.
>
> "[Appellant]: Okay. Well, give me two weeks.
>
> "The court: Okay, two weeks. Do you think you can somehow do a better job than [your counsel] on your sentence?
>
> "[Appellant]: I have no evidence yet.
>
> "The court: What's the new evidence[?]

9

"[Appellant]:  Witnesses sent letters and I'm getting affidavits made up saying that they were coerced.

"The court:  All right.

"[Appellant's counsel]:  He wants to do a new trial motion.

"[Appellant]:  A new trial motion, that's what I want to do.

"The court:  Okay.  What day do [--] you don't think you'd be better off giving the information to [your counsel] and let[ting] her file the motion?  Because she knows how to file a motion, you don't.

"[Appellant's counsel]:  Your Honor, we've discussed it and --

"The court:  What?

"[Appellant's counsel]:  I said we've discussed it and that's not something --

"The court:  You understand [your counsel]'s in a better position to file a motion for new trial than you are?  Do you understand that?

"[Appellant]:  Yes.

"The court:  You nevertheless want to continue -- you want to represent yourself?

"[Appellant]:  Yes.

"The court:  Okay.  All right.  You can represent yourself."

Having granted appellant's *Faretta* motion, the court appointed appellant's former counsel as standby counsel and continued the hearing to February 19.

### F. *Sentencing and New Trial Motion*

In a sentencing memorandum, the People asked the court to sentence appellant to a 50-years-to-life term on the murder count (doubled from a 25-years-to-life term as a result of the jury's true finding on the firearm allegation), a consecutive 13-year term on the attempted murder count (comprising the high term of nine years and three- and one-year enhancements for appellant's infliction of great bodily injury and use of a knife as a deadly weapon, respectively), and a consecutive one-year term on the assault with a deadly weapon count. The People relied on purported aggravating factors under California Rules of Court, rule 421, including, inter alia, the facts that: (1) appellant inflicted great bodily injury, in that he "shot and killed" Jackson and "beat and stabbed" Smith; (2) appellant used weapons, viz., a gun, a knife, and a large wooden object; (3) appellant had engaged in a pattern of "violent conduct," demonstrated by 21 prior convictions he sustained between 1988 and 2016; and (4) appellant had shown no remorse. Most of appellant's prior convictions were for possession of cocaine for sale; with only two exceptions -- each a domestic violence offense -- the underlying offenses were nonviolent.

The same day appellant's *Faretta* motion was granted (January 29, 2019), he filed a handwritten motion for new

11

trial.  The motion was based on the following grounds:  (1) the prosecutors and detectives coerced witnesses by threatening to incarcerate them or withhold compensation if they did not testify as they had been coached; (2) one of the prosecutors unlawfully communicated with a juror by mouthing "thank you" to the juror and exchanging smiles, waves, blinks, and nods; (3) the video evidence had been improperly altered in an unspecified manner; (4) the court improperly failed to instruct the jury on witnesses being under the influence of drugs; and (5) the court improperly failed to instruct the jury on in-custody witnesses.  In declarations submitted in opposition to appellant's motion, the prosecutors and Detective Vander Lee denied appellant's accusations.

At the outset of the February 19, 2019 sentencing hearing, appellant informed the court he was not ready to argue his motion for new trial, explaining, "I have a supplemental I want to do now that I'm in pro per."  After confirming that appellant was requesting another continuance of the hearing, the court denied the request.  Appellant protested, "You gave me pro per and I don't even have my case file."  The court responded, "You asked to be pro per.  If you have difficulties representing yourself and preparing at the jail, that's one of the unfortunate things about being in custody.  You're the one that wanted to represent yourself."

The court denied the new trial motion, explaining, "[Appellant] was represented by very experienced counsel

12

during the trial. The jury was properly instructed in all areas, including in-custody witnesses . . . . There's no evidence that there was anything -- any misfeasance or malfeasance regarding the videos. There is no evidence they were altered, and they were properly authenticated. [¶] Regarding the contention that there was improper contact with Juror Number 7, that is baseless. There's no evidence of that. [¶] There's no evidence that any witness perjured themself [*sic*] or any witness was unduly coerced by police or any prosecutor. [¶] The motion for new trial is denied. There is no merit."

Appellant protested that Davis had testified she did not want to testify, and that he had obtained letters -- presumably including a letter from Davis -- since the trial. The court reviewed the letters and remarked, "These don't tell us anything new. The in-custody witnesses [Davis and Johnson] didn't want to be here. They didn't want to testify."[1] Appellant added, "I also want -- in my supplemental I wanted to add about the misstatements of facts that [the prosecutor] did in front of the jury, as far as claiming that [Johnson] was scared. She never stated that she was scared to testify." The court replied, "You're an example of why people should not be representing themself [*sic*]. You were represented by a trained attorney. She knew

---

[1]     The letters reviewed by the court are not in the record. The clerk of the superior court certified that the letters could not be located.

13

what she was doing.  You don't know what you're doing, but the law allows you to represent yourself."

The court immediately proceeded to impose sentence, without asking appellant whether he wished to argue his sentence.  On the murder count (count three), the court sentenced appellant to a term of 50 years to life, comprising a base term of 25 years to life and an additional 25-years-to-life term resulting from the firearm enhancement.  On the attempted murder count (count one), the court sentenced appellant to a term of 11 years, comprising the middle term of seven years and three- and one-year enhancements for appellant's infliction of great bodily injury and use of a knife as a deadly weapon, respectively.  On the assault with a deadly weapon count (count two), the court sentenced appellant to the middle term of three years, stayed pursuant to Penal Code section 654.  Finally, on the felon-in-possession count (count four), the court sentenced appellant to the middle term of two years, to run concurrently with his sentence on the attempted murder count.  The court also imposed a victim restitution fine, a criminal conviction assessment, and a court operations assessment.  The court articulated no reasons for any of its sentencing decisions.

Appellant timely appealed.

## DISCUSSION

Appellant contends, inter alia, the trial court violated his constitutional right to counsel by allowing him to represent himself in litigating his sentence and motion for

14

new trial without first ascertaining whether his purported waiver of his right to counsel was knowing and intelligent. We agree. Though the parties disagree whether a constitutional violation of this nature is subject to harmless-error analysis, we need not resolve this dispute, as reversal is required under each standard the parties advance. We therefore reverse and remand for resentencing.

### A. *Principles*

A valid *Faretta* waiver requires "'a finding that the waiver is knowing and voluntary, i.e., the accused understands the significance and consequences of the decision and makes it without coercion.'" (*People v. Frederickson* (2020) 8 Cal.5th 963, 1002 (*Frederickson*).) To support such a finding, a trial court must "inform the defendant in general terms of the most common disadvantages" of self-representation. (*Id.* at 1003.) "'The defendant "should at least be advised that: self-representation is almost always unwise and that the defense he conducts might be to his detriment; he will have to follow the same rules that govern attorneys; the prosecution will be represented by experienced, professional counsel who will have a significant advantage over him in terms of skill, training, education, experience, and ability; the court may terminate his right to represent himself if he engages in disruptive conduct; and he will lose the right to appeal his case on the grounds of ineffective assistance of counsel. [Citation.] In addition, he should also be told he

15

will receive no help or special treatment from the court and that he does not have a right to standby, advisory, or cocounsel."'" (*People v. Ruffin* (2017) 12 Cal.App.5th 536, 544 (*Ruffin*).) Courts frequently require defendants to sign written forms including such admonitions before granting their requests for self-representation. (See, e.g., *id.* at 541; *Frederickson, supra,* at 1004.)

Where a defendant requests self-representation after trial, the *Faretta* inquiry "'need not be as exhaustive and searching as a similar inquiry before the conclusion of trial[.]'" (*People v. Burgener* (2009) 46 Cal.4th 231, 242 (*Burgener*).) Nevertheless, the trial court must ensure the defendant is aware of the potential dangers of self-representation. (See *id.* at 242-243 [circumstances that "defendant asked to represent himself for the limited purpose of the trial court's reconsideration of his application to modify the [death penalty] verdict," and that application had already been briefed, "did not relieve the court of its duty altogether to ensure that defendant be made aware 'of the hazards ahead' if he proceeded without the assistance of counsel"; trial court should have advised defendant "that the district attorney would be both experienced and prepared, that defendant would receive no special consideration or assistance from the court and would be treated like any other attorney, that he would have no right to standby or advisory counsel, [and] that he would be barred from challenging on appeal the adequacy of his representation"].) "'[C]ourts must draw every inference against supposing that

16

the defendant wishes to waive the right to counsel.'" (*Ruffin*, *supra*, 12 Cal.App.5th at 545.)

Some courts have held that a failure-to-warn *Faretta* violation is a structural error requiring automatic reversal. (See *Burgener*, *supra*, 46 Cal.4th at 244.) On the other hand, our Supreme Court has assumed, without deciding, that a deficient *Faretta* colloquy may be harmless if the People show beyond a reasonable doubt that: (1) the defendant would have waived counsel even had he received adequate warnings; or (2) the outcome would have been no more favorable to the defendant even had he elected to be represented by counsel. (See *id.* at 244-245.) Appellant urges us to apply the automatic-reversal standard, while the People urge us to apply either or both of the harmless-error standards. We need not determine which standard applies because, as explained below, reversal is required under each of the proffered standards.

## B. *Analysis*

The trial court failed to ascertain whether appellant sufficiently understood the risks of self-representation to knowingly waive his right to counsel. The court did not provide appellant with any written advisement of the risks of self-representation. In the course of its brief oral colloquy, the court completed only two relevant exchanges with appellant. First, the court asked appellant if he believed he could "do a better job" than his counsel on his sentence, and appellant responded, "I have no evidence yet." This response

17

was a non-sequitur from which we can infer no understanding of the risks of self-representation at sentencing. Second, after informing appellant that he, unlike his counsel, did not know "how to file a motion," the court asked appellant if he understood his counsel was in a better position to file a motion for new trial. Appellant said he understood this, and the court granted his motion. Thus, the court allowed appellant to represent himself at his sentencing hearing -- where he made no sentencing argument whatsoever -- without first ascertaining anything other than appellant's stated understanding that his counsel was better equipped to file a new trial motion.

*Faretta* and its progeny required more. The risks of self-representation at sentencing were substantial; nothing before the trial court suggested appellant possessed the sophisticated legal knowledge necessary to address the court's discretion in sentencing appellant's homicide and related convictions, or to respond to the People's arguments concerning the exercise of that discretion.[2] As appellant's current counsel observes, appellant "appeared unaware of any sentencing discretion the court had, including the ability

---

[2] Contrary to the People's contention, appellant's criminal history did not warrant an assumption that he understood the risks of self-representation. Although appellant had been sentenced for various nonviolent offenses and two domestic violence offenses, nothing in the record suggested he had experience with homicide sentencing, much less representing himself.

18

to strike or reduce the firearm enhancement pursuant to Senate Bill No. 620 and *People v. Morrison* (2019) 34 Cal.App.5th 217, 221-225, the ability to impose concurrent terms on the attempted murder count, the ability to strike the great bodily injury or personal use enhancements attached to the attempted murder conviction, or the ability [to] strike fines, fees and assessments based on an inability to pay . . . ." Had appellant remained represented by counsel, his counsel might have objected to the imposition of the restitution fine and assessments under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (issued weeks before the January 29, 2019 hearing at which appellant's *Faretta* motion was made and granted). Moreover, his counsel might have argued for a favorable exercise of the court's sentencing discretion, including by objecting to the People's dual reliance on certain facts as both aggravating factors and elements of the offense or enhancement, the People's reliance on appellant's largely nonviolent criminal history as evidence of a pattern of "violent conduct," and the People's reliance on appellant's lack of remorse. (See 3 Witkin & Epstein, Cal. Criminal Law (4th ed. 2020) Punishment, §§ 319-320 [discussing prohibitions on dual reliance on fact as both aggravating factor and as element of crime or enhancement]; *id.* § 322 ["prior criminality is distinct from prior violence"]; *People v. Weber* (2013) 217 Cal.App.4th 1041, 1064 [trial court could not rely on defendant's lack of remorse as aggravating factor, where defendant denied guilt and evidence of guilt was in conflict].) By representing

himself, appellant risked forfeiting all sentencing arguments and potentially receiving a longer prison sentence.

Failing to address these risks, among others, the court advised appellant only that his counsel was "in a better position to file a motion for new trial." It failed to advise him that he would receive no special assistance from the court (such as the continuance appellant later requested), that the People would be represented at sentencing by experienced and prepared counsel, or that he would be barred from raising appellate challenges to the adequacy of his representation (such as a challenge based on his failure to object to the restitution fine and assessments under *People v. Dueñas, supra,* 30 Cal.App.5th 1157). (See *Burgener, supra,* 46 Cal.4th at 242-243 [faulting trial court for failing to deliver these admonitions, even though defendant sought self-representation only on already-briefed application to modify death verdict].) We conclude that in doing no more than extracting appellant's concession that his attorney was better equipped to file a new trial motion than he was, the court failed to ascertain whether appellant's purported waiver of his right to counsel was knowing and intelligent, and thus violated his right to counsel by allowing him to represent himself.[3]

---

[3] The *Faretta* cases on which the People rely are distinguishable. (See *People v. Weber, supra,* 217 Cal.App.4th at 1045, 1057-1060 [record supported finding that defendant's *Faretta* waiver was knowing and voluntary, where trial court ascertained that defendant understood "that he would be held to
*(Fn. is continued on the next page.)*

20

Assuming, arguendo, that the court's *Faretta* violation is amenable to harmless-error review, we reject both of the People's arguments for finding the violation harmless beyond a reasonable doubt. First, we conclude there was a reasonable doubt whether appellant would have elected to remain represented by counsel had he been adequately advised of the risks of self-representation at sentencing. In arguing to the contrary, the People rely primarily on evidence that appellant had prepared his new trial motion prior to requesting self-representation. However, this preparation merely reflected appellant's desire to file the motion -- not his hypothetical insistence on filing the motion in the face of adequate admonitions of the risks of

---

the same standards as an attorney, that the trial court would not assist him in representing himself, and that another trial judge had recently allowed defendant to represent himself in a criminal case," and trial court would have delivered additional admonitions had defendant's repeated interruptions not thwarted its attempts to do so]; *People v. Sullivan* (2007) 151 Cal.App.4th 524, 548-550 [defendant failed to satisfy his appellate burden on *Faretta* claim, where record included neither reporter's transcript of *Faretta* hearing nor settled statement, requiring the Court of Appeal to presume that trial court regularly performed its *Faretta* duties].) Another, non-*Faretta* case on which the People rely is inapposite. (See *Parke v. Raley* (1992) 506 U.S. 20, 23-25, 35-57 [Kentucky Court of Appeals did not err in finding that defendant knowingly and voluntarily entered guilty plea to burglary charge, where defendant was represented by counsel when he entered plea and had been fully advised of his rights when he pleaded guilty to another burglary two years earlier].)

representing himself at sentencing. Had he received such admonitions, he might have elected to remain represented by counsel even at the expense of filing his new trial motion, or revealed -- as his current counsel suggests -- that his true desire was for substitute counsel willing to file the motion. Second, we conclude there is a reasonable doubt whether appellant would have secured a more favorable sentence had he elected to remain represented by counsel. The court gave no reasons for any of its sentencing decisions, leaving us with no basis to find the court would have adhered to each decision in the face of all arguments counsel might have made.

## DISPOSITION

The judgment is reversed.  The matter is remanded with instructions to appoint counsel to represent appellant in litigating his sentence and any post-trial motion he may choose to file, and to resentence appellant.  Our instructions have no effect on appellant's right to represent himself upon a knowing and voluntary waiver of his right to counsel.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

MANELLA, P. J.

We concur:

WILLHITE, J.

CURREY, J.

23