Filed 11/15/21  P. v. Hooker CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. EZRA HOOKER, Sr., Defendant and Appellant. | B307450 Los Angeles County Super. Ct. No. BA479490 |

APPEAL from an order of the Superior Court of Los Angeles County, Michael D. Abzug, Judge. Reversed.

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted defendant and appellant Ezra Hooker of assault with a firearm, unlawful possession of ammunition, felon in possession of a firearm, and elder abuse, and found firearm and prior conviction allegations true. The trial court sentenced him to 23 years in state prison. On appeal, Hooker argues his waiver of his right to counsel was not knowing and intelligent because the trial court estimated his maximum possible sentence at 17 years when his actual maximum possible sentence was 32 years. For the reasons discussed below, we agree. We therefore reverse the judgment.[1]

## PROCEDURAL BACKGROUND

The Los Angeles County District Attorney filed an information charging Hooker with assault with a firearm (Pen. Code,[2] § 245, subd. (a)(2); count one); unlawful possession of ammunition (§ 30305, subd. (a)(1); count two); possession of a firearm by a felon (§ 29800, subd. (a)(1); count three); and elder or dependent adult abuse (§ 368, subd. (b)(1); count four). With respect to counts one and four, the information alleged Hooker personally used a firearm (§ 12022.5) and sustained a prior serious felony conviction (§ 667, subd. (a)(1)). With respect to all counts, the information alleged Hooker sustained a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and four

---

1     Because we reverse on this ground, we need not address Hooker's other contentions.

2     All further undesignated statutory references are to the Penal Code.

prior convictions for which he served prison terms (§ 667.5, subd. (b)).[3]

The jury found Hooker guilty on all counts and found the firearm allegations true. In a bifurcated proceeding, the jury found true that Hooker had sustained a prior manslaughter conviction (§ 192, subd. (a)), which served as the basis for the prior strike and serious felony allegations.

The trial court sentenced Hooker to 23 years in state prison, consisting of an upper 4-year term on count 4, enhanced to 8 years because of the prior strike, a 10-year firearm enhancement (§ 12022.5, subd. (a)), and a 5-year prior serious felony enhancement. The court imposed a concurrent 23-year term on count 1 and concurrent 3-year terms on counts 2 and 3.

Hooker timely appealed.

## DISCUSSION[4]

## Hooker's Waiver of His Right to Counsel was Not Knowing and Intelligent

### A. Relevant Proceedings

At his initial arraignment on the felony complaint, Hooker informed Judge Teresa T. Sullivan that he wished to waive his right to assistance of counsel and proceed in pro per. The court advised Hooker of the charges he was facing and that there were legal issues involved with the prior conviction allegations. The

---

3    The information erroneously cited section 667.6, subdivision (b) when referencing the prior prison term allegations.

4    We omit discussion of the facts because they are not relevant to the dispositive issue in this appeal.

court informed Hooker that he was looking at "a lot of time on this," "maybe 17 years if things go bad."[5] The court advised Hooker that it was almost always unwise for a defendant to represent himself, that he would not be afforded any special assistance by the court, and that he would be held to the same standards of conduct as an attorney. It also cautioned Hooker that he would not be able to claim ineffective assistance of counsel on appeal for any mistakes he makes during the proceedings. The court asked Hooker if he understood the potential consequences of proceeding pro per, and Hooker replied that he did. The court then reiterated the potential dangers of proceeding pro per and its recommendation that Hooker avail himself of counsel. When Hooker indicated he still wished to proceed in pro per, the court directed him to an Advisement and Waiver of Right to Counsel Form. After Hooker stated he had initialed the boxes on the form and signed the last page, the court announced it was satisfied he had knowingly, understandably, and intelligently executed the waiver, had freely and voluntarily waived his right to counsel, and was competent to represent himself.

Hooker represented himself at the preliminary hearing where he was held to answer on all the charged offenses and the special allegations.

Hooker subsequently appeared without counsel at the arraignment on the felony information before Judge Michael D. Abzug. The court noted Hooker's pro per status. The court reminded Hooker that he had a constitutional right to counsel and appointed stand-by counsel, though it did not readvise him of

5    The court underestimated Hooker's maximum possible sentence, which was 32 years, nearly double the court's estimate.

the pitfalls of self-representation, take a renewed waiver of his right to counsel, or advise him that his maximum possible sentence was greater than 17 years.

Hooker went on to represent himself at trial.

## B. Applicable Legal Principles

"A criminal defendant has a right, under the Sixth Amendment to the federal Constitution, to conduct his own defense, provided that he knowingly and intelligently waives his Sixth Amendment right to the assistance of counsel. [Citations.]" (*People v. Burgener* (2009) 46 Cal.4th 231, 240-241 (*Burgener*), citing *Faretta v. California* (1975) 422 U.S. 806, 835-836 [95 S.Ct. 2525, 45 L.Ed.2d 562] (*Faretta*).) "In order to make a valid waiver of the right to counsel, a defendant 'should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." [Citation.]' [Citation.]" (*People v. Koontz* (2002) 27 Cal.4th 1041, 1070 (*Koontz*), citing *Faretta, supra*, 422 U.S. at p. 835.) "No particular form of words is required in admonishing a defendant who seeks to waive counsel and elect self-representation; the test is whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case. [Citations.]" (*Koontz, supra*, at p. 1070.) We review "de novo whether the defendant's invocation was knowing and voluntary. [Citations.]" (*People v. Marshall* (1997) 15 Cal.4th 1, 24.) "'The burden is on the defendant to demonstrate he did not knowingly and intelligently waive his right to counsel.' [Citations.]" (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 547, italics omitted (*Sullivan*).)

5

## C. Analysis

Hooker contends his waiver of the right to counsel was not knowing and intelligent because the trial court underestimated his potential maximum sentence. He notes that the trial court estimated his sentence at "maybe 17 years if things go bad," when his maximum possible sentence was 31 years and 4 months. Hooker's maximum possible sentence was actually 32 years. The Attorney General counters that even though the trial court underestimated Hooker's maximum possible sentence, his waiver of his right to counsel was knowing and intelligent. We agree with Hooker.

As this court previously noted in *People v. Ruffin* (2017) 12 Cal.App.5th 536, 544 there is a split in California authority whether the trial court must specifically advise a defendant who seeks to represent himself of the maximum penal consequences of the convictions. (Compare *People v. Bush* (2017) 7 Cal.App.5th 457, 469-474 (*Bush*) [advisement of penal consequences not required] with *People v. Jackio* (2015) 236 Cal.App.4th 445, 454-455 [advisement of maximum punishment, including enhancements, is required].) We resolve Hooker's case without weighing in on this split in authority. We note that the issue in Hooker's case is slightly different than the question on which courts are split. Courts are split on whether a trial court has an affirmative duty to inform a defendant of his or her maximum sentence. The question here is whether a trial court that elects to inform the defendant of the maximum sentence must do so accurately. We conclude the answer is yes. Critically, our Supreme Court has explained "the test is whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including *the risks and*

*complexities of the particular case*. [Citation.]" (*Koontz, supra*, 27 Cal.4th at p. 1070, italics added.) By misinforming Hooker that his maximum possible sentence was 17 years when he actually faced up to 32 years, the court deprived him the opportunity to meaningfully understand one of the most crucial "risks . . . of [his] particular case[ ]" – the risk that, if convicted, he could spend much or all of the rest of his life in prison.[6] The trial court's 15-year underestimate of Hooker's maximum possible sentence was constitutional error because it fundamentally interfered with his ability to knowingly and intelligently understand the potential consequences of waiving his right to counsel.

"[W]hen the record demonstrates that the trial judge neglected to advise the defendant of the dangers and disadvantages of self-representation as required by *Faretta* when the waiver is taken, but the waiver of the right to counsel was voluntary, the courts have split on the standard of reversible error: some have determined that the error is structural and reversible per se; others have declared the error must be found prejudicial under the *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705] [(*Chapman*)] test unless the error is harmless beyond a reasonable doubt. [Citations.]" (*Sullivan, supra*, 151 Cal.App.4th at p. 551, fn. 10.) Under the *Chapman* standard, the burden is on the Attorney General to

---

6       Hooker was 52 years old when the court arraigned him on the felony complaint, took his waiver of his right to counsel, and advised him that he was facing 17 years in prison. Thus, the court erroneously informed Hooker that he could be released by his late 60's, when he potentially could have been held until his mid-80's. We reject the Attorney General's contention that this error did not significantly underestimate Hooker's maximum possible sentence.

prove the error was harmless beyond a reasonable doubt. (See *Chapman*, *supra*, 386 U.S. at p. 24.)

Assuming that inaccurate and misleading *Faretta* advisements can be harmless in some circumstances where the waiver of counsel is nonetheless voluntary, the Attorney General here cannot sustain his burden of proving the error was harmless beyond a reasonable doubt. We reject the Attorney General's contention that the error was harmless because the record shows Hooker "would have exercised his right to represent himself regardless of what the trial court had advised him regarding his potential maximum sentence." Although the record shows Hooker wanted to represent himself on the court's representation that his maximum possible sentence was 17 years, it provides no indication whether he would have decided to represent himself if the court had correctly informed him that his maximum sentence was 32 years. Nor does the record reveal whether Hooker would have elected to represent himself if he had been told he faced a possible sentence of 23 years, the sentence he actually received. On this silent record, we cannot conclude the error was harmless beyond a reasonable doubt.[7]

---

[7] Because we conclude the trial court's underestimate of Hooker's maximum possible sentence was prejudicial error, we need not fully address Hooker's contentions relating to section 987, subdivision (a), though we note the court's failure to readvise Hooker of the pitfalls of self-representation and take a renewed waiver of his right to counsel at the arraignment on the felony information was error under that statute. (See *People v. Crayton* (2002) 28 Cal.4th 346, 361.)

## DISPOSITION

The judgment is reversed. The case is remanded for further proceedings, and for the People to decide whether to retry the case.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


CURREY, J.


We concur:


MANELLA, P.J.


COLLINS, J.