Filed 2/28/22  P. v. Carrasco CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C091577 |
| Plaintiff and Respondent, | (Super. Ct. No. 18CF05483) |
| v. | |
| GERARDO ANTHONY CARRASCO, | |
| Defendant and Appellant. | |

After a bench trial, defendant Gerardo Anthony Carrasco was found guilty of failing to register as a sex offender.  The trial court granted defendant's request to waive his right to a jury trial and also permitted him to represent himself for a portion of the trial pursuant to *Faretta v. California* (1975) 422 U.S. 806, 821.  He contends on appeal that neither the waiver of his right to a jury trial nor the waiver of his right to counsel were valid.  We disagree and affirm the judgment.

1

BACKGROUND

Defendant was charged with failing to register as a sex offender following his release from incarceration (Pen. Code, § 290.015, subd. (a)),[1] and it was alleged he had served five prior prison terms (§ 667.5, subd. (b)) and had one prior strike conviction (§§ 667, subds. (b)-(j), 1170.12). On January 2, 2019, the trial court held a trial readiness conference for this case and another case involving a stolen vehicle. Defendant initially confirmed that he was rejecting the prosecution's plea offer for this case after his counsel discussed the offer with him "at length." The court then asked whether defendant wanted "a jury trial on that?" The following conversation ensued:

"[DEFENSE COUNSEL]: Do you want a jury trial or court trial?

"THE DEFENDANT: Court trial would be nice.

"THE COURT: All right. So --

"THE DEFENDANT: Respectful.

"THE COURT: You understand, Mr. Carrasco, that you have a right to have a jury trial. And what that includes is that we bring down individuals from the community, and those are chosen by some questioning, and that includes questioning by your attorney. And that they would ultimately be the fact finder in that. And it's my understanding, which you can, waive your right to a jury trial for that case and have a judge decide that instead?

"THE DEFENDANT: Yes, Your Honor. . . .

"[¶] . . . [¶]

"THE COURT: A court trial on the failure to register --

"THE DEFENDANT: Yes.

"THE COURT: -- upon release or incarceration?

---

[1] Undesignated statutory references are to the Penal Code.

2

"THE DEFENDANT: Yes.

"THE COURT: And there are special allegations that go along with that. And you'd like to have a court trial on all of those; is that correct?

"THE DEFENDANT: Yes.

"THE COURT: All right. So do we want to then set, then keep our jury trial dates for the auto theft and we can set the court trial after that?

"[DEFENSE COUNSEL]: Your Honor, I think we had talked about doing the court trial first with the [section] 290, because if Mr. Carrasco is convicted on the [section] 290 matter, his exposure, as to my calculation, is 11 years. So after that I'm not sure."

On February 6, 2019, at a status conference, defendant requested a continuance to hire a private attorney. The conversation with the court continued:

"[DEFENDANT]: If it's possible. If not, there's an option [defense counsel] discussed, a Faretta motion in the meantime.

"[DEFENSE COUNSEL]: Your Honor, I spoke to Mr. Carrasco earlier this week. He has not . . . made arrangements to hire private counsel yet. He said he would like more time. If the Court is not inclined to give him more time, he would then like to go pro per. I explained to him going pro per involves filling out a Faretta waiver form which, of course, counsel cannot assist in filling out.

"THE COURT: Correct."

The trial court gave defendant a *Faretta* waiver form and continued the matter for one week, stating: "[S]o if in fact you are unable to retain private counsel within a week, you will have [the form]. And if that is still what you'd like to do, I just want to make sure you have ample time to fill it out because it talks about both the pros and the cons of representing yourself. And I want to make sure that you understand that."

On February 13, 2019, defense counsel informed the trial court defendant was unable to obtain private counsel and had completed a *Faretta* waiver form. On

3

defendant's *Faretta* form, he acknowledged the dangers and disadvantages to self-representation, including that "it is almost always unwise to act as your own lawyer" and you "may do more harm than good for yourself." Defendant also acknowledged on the form he understood the charges and consequences, including that he was "aware of the consequences and maximum possible sentence, should [he] be convicted." He did, however, note that he did *not* know "[n]o one will be appointed to assist [him] in [his] self-representation" or that he "will be provided no more access to the law library than any other inmate."

At the hearing, the trial court discussed co-counsel and law library access with defendant; these were the two issues he had represented he did not know about on the form. The court told defendant, "[y]ou either represent yourself or have the public defender," and defendant said he understood that. He also was asked about law library access and indicated: "From my understanding, that was corrected. There's time for CLIC, legal services within the jail. So I understand that as well." The court then asked: "So those are -- both are now yeses; is that correct?" Defendant confirmed, "that is correct." The court then confirmed defendant understood everything else in the form and granted his request to represent himself.

Defendant's trial began on March 8, 2019. The prosecution called two witnesses and defendant cross-examined both. After the prosecution rested, defendant requested a continuance for the trial court to provide certain documents and the court continued the trial to March 27, 2019.

On March 27, 2019, defendant told the trial court he no longer wanted to represent himself and asked the court to appoint counsel. The court granted the request, reappointed counsel, and continued the case to allow defendant to confer with counsel.

Defendant retained private counsel before the trial recommenced on June 19, 2019. On that day, new counsel stated the defense did not have any additional evidence and argued in closing statements there was insufficient evidence to support the sole

4

charge. The trial court found defendant guilty and found the prior conviction allegations true.

The probation department reported defendant had 10 prior adult criminal cases resulting in 12 convictions, six of which were felonies. One of the plea forms for a 2004 conviction was included in the record and showed defendant had acknowledged he understood he was giving up the right to be tried by a jury.

On January 22, 2020, the trial court dismissed the prior prison term enhancements and sentenced defendant to the middle term of two years in prison, doubled for the prior strike.

Defendant timely appealed. After numerous granted requests for briefing continuances, the case was fully briefed on August 9, 2021, and assigned to this panel on September 28, 2021.

DISCUSSION

I

*Jury Trial Waiver*

Defendant first argues he did not knowingly waive his right to a jury trial because the trial court failed to tell him that a jury consists of 12 members, he had a right to take part in the jury selection, the jury must reach a unanimous verdict, and that the judge alone decided guilt or innocence if he waived a jury trial. Although we agree the advisement could have been more comprehensive, under the specific circumstances we discuss *post*, we conclude defendant was sufficiently advised.

A criminal defendant has the constitutional right to a jury trial. (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 166 (*Sivongxxay*); U.S. Const., 6th Amend.; Cal. Const., art. I, § 16.) That right may be waived, provided the waiver is " 'knowing and intelligent, that is, " ' "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it," ' " as well as voluntary " ' "in the sense that it was the product of a free and deliberate choice rather than

5

intimidation, coercion, or deception." ' " '  [Citations.]  '[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case.' "  (*Sivongxxay*, at p. 166.)

While acknowledging "the value of a robust oral colloquy," and providing "general guidance" to help ensure a jury trial waiver is knowing and intelligent, our Supreme Court has been careful to emphasize that its guidance is merely "advisory." (*Sivongxxay, supra*, 3 Cal.5th at pp. 169-170.)  Our high court has "persistently declined to mandate any specific admonitions describing aspects of the jury trial right."  (*People v. Daniels* (2017) 3 Cal.5th 961, 992 (conc. & dis. opn. of Cuéllar, J.); see *Sivongxxay*, at p. 167 ["Our precedent has not mandated any specific method for determining whether a defendant has made a knowing and intelligent waiver of a jury trial in favor of a bench trial"].)

*Sivongxxay* did provide guidance for trial courts, "recommend[ing]" defendants be advised:  "(1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence."  (*Sivongxxay, supra*, 3 Cal.5th at p. 169.)  The court, however, was careful to "emphasize" that this "guidance is not intended to limit trial courts to a narrow or rigid colloquy" and observed, "[u]ltimately, a court must consider the defendant's individual circumstances and exercise judgment in deciding how best to ensure that a particular defendant who purports to waive a jury trial does so knowingly and intelligently."  (*Id*. at p. 170.)  The test of a valid waiver turns not on whether specific warnings or advisements were given, but on whether the record affirmatively shows that the waiver is voluntary and intelligent under the totality of the circumstances.  (*Id*. at pp. 166-167.)

The parties argue that two cases are particularly relevant here.  In *People v. Jones* (2018) 26 Cal.App.5th 420, the appellate court found a waiver was invalid.  Though the

6

defendant had some discussions with her counsel and was told the judge would decide the case, the record did not show whether she discussed the nature of the jury trial, discussed that she had a right to a jury trial, was informed of the nature of a jury trial, or was informed that she even had a right to a jury trial. (*Id*. at p. 435.) The court noted our Supreme Court "has consistently emphasized the importance of the defendant's knowledge that he or she has ' " 'the right to be tried by a jury of his [or her] peers.' " ' " (*Id*. at p. 436.) That could not be presumed because the defendant "had no experience with the criminal justice system," so she had not previously waived her rights in connection with a guilty plea. (*Id*. at pp. 436-437.) The court concluded "[t]here is no showing from this record that [the defendant] understood the nature of the right to a jury trial she was relinquishing." (*Id*. at p. 436.)

A different panel of this court found a waiver valid in *People v. Roles* (2020) 44 Cal.App.5th 935. There, the defendant had not been advised on the "specific aspects of a jury trial," but he had " 'extensive conversation[s]' " with his counsel about court and jury trials, including about the meaning of a jury trial and what it meant to waive the right to a jury. (*Id*. at p. 950.) We distinguished *Jones*, because both the court and the defendant's counsel inquired into the waiver, there were multiple discussions with the defendant's counsel, and "this was not defendant's first experience with the criminal justice system." (*Id*. at p. 951.)

The totality of the circumstances here establishes defendant knowingly waived his right to a jury trial. He was represented by counsel, had recently discussed "at length" a plea offer (which would have involved giving up his right to a jury trial, among other rights), and the trial court informed him the jury would consist of "individuals from the community," the jury would "ultimately be the fact finder," and that if he waived the right "a judge [would] decide that instead." This adequately informed him of his right to a jury trial and the essential features of that right.

7

Defendant also has extensive experience with the criminal justice system, as we have described *ante*, and a plea form in which he acknowledged his right to a jury trial in writing is included in the record. Even if we assume defendant was never found guilty by jury and thus had not actually *experienced* a jury trial, we must presume the trial courts would not have accepted defendant's pleas in his 10 criminal cases unless he entered a valid waiver of his right to a jury trial after having been properly advised of that right. (*In re Julian R.* (2009) 47 Cal.4th 487, 499 [" ' "a trial court is presumed to have been aware of and followed the applicable law" ' "].) This extensive experience with the criminal justice system, along with the advisements he did receive and the totality of the circumstances, strongly supports an inference defendant knew he had a right to a jury trial and understood that right. (See *Parke v. Raley* (1992) 506 U.S. 20, 37 ["We have previously treated evidence of a defendant's prior experience with the criminal justice system as relevant to the question whether he knowingly waived constitutional rights"].) This case is much closer to *Roles* than *Jones*.

Defendant argues for a formulaic approach explicitly rejected by the Supreme Court; however, as we have just explained, the trial court's failure to mention the number of jurors and the need for unanimity is not determinative, even if the trial court did not fully follow the Supreme Court's guidelines. Thus, although we do agree that following the guidelines detailed by our Supreme Court in *Sivongxxay* is the most effective means of guaranteeing defendants properly waive their jury trial rights, under the specific facts of this case and considering the circumstances thereof in their totality, we conclude that defendant entered a knowing and intelligent waiver of his right to a jury trial in favor of a court trial.

## II

### *Waiver of Right to Counsel*

Defendant next asserts the trial court failed to obtain a valid waiver of his right to counsel because it did not advise him that his maximum sentence was 11 years in prison. We disagree.

A valid *Faretta* waiver, to relinquish the right to counsel, requires " 'a finding that the waiver is knowing and voluntary, i.e., the accused understands the significance and consequences of the decision and makes it without coercion.' " (*People v. Frederickson* (2020) 8 Cal.5th 963, 1002.) "The purpose of the 'knowing and voluntary' inquiry, . . . is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." (*Godinez v. Moran* (1993) 509 U.S. 389, 401, fn. 12.) "No particular form of words, however, is required in admonishing a defendant who seeks to forgo the right to counsel and engage in self-representation. ' "The test of a valid waiver of counsel is not whether specific warnings or advisements were given but whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case." ' " (*People v. Lawley* (2002) 27 Cal.4th 102, 140.)

"On appeal, a reviewing court independently examines the entire record to determine whether the defendant knowingly and intelligently invoked his right to self-representation." (*People v. Doolin* (2009) 45 Cal.4th 390, 453.) We must "indulge every inference against waiver of the right to counsel." (*People v. Marshall* (1997) 15 Cal.4th 1, 20.) However, " '[t]he burden is on the defendant to demonstrate he did not knowingly and intelligently waive his right to counsel.' " (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 547, italics omitted.)

"[T]here is a split of authority in California as to whether the court must also specifically advise the defendant of the maximum penal consequences of conviction." (*People v. Ruffin* (2017) 12 Cal.App.5th 536, 544, citing *People v. Bush* (2017)

9

7 Cal.App.5th 457, 469-474 [discussing decisions and holding advisement of penal consequences is not essential to a valid *Faretta* waiver]; *People v. Jackio* (2015) 236 Cal.App.4th 445, 454-455 [holding that court must advise the defendant of the maximum punishment if convicted, including enhancements].)

Even assuming the trial court was required to inform defendant of the maximum punishment and did not explicitly do so, the record here establishes that he knew his exposure. On January 2, 2019, defense counsel said in open court, in the presence of defendant, that she calculated defendant's maximum sentence as 11 years. This was shortly after she said she had spoken with defendant "at length" regarding the prosecutor's plea offer. Although this was not the court informing defendant of the maximum exposure at the time of the waiver, it was only six weeks prior. As defendant recognizes, "[t]his penal exposure would sober any prospective pro-per defendant," so it is unlikely defendant forgot this significant potential sentence when relinquishing his right to counsel shortly after. And in defendant's *Faretta* waiver form, he acknowledged he understood the maximum penalty. The court did not orally go through each admonition in the form, but there is no strict requirement that it do so. (*People v. Burgener* (2009) 46 Cal.4th 231, 241 [" '[a]s long as the record as a whole shows that the defendant understood the dangers of self-representation, no particular form of warning is required' "].) Regardless, the trial court did go through the two issues defendant responded "no" to during the hearing, further ensuring defendant understood the consequences of his decision to self-represent.

We agree that even if advising a defendant of their maximum exposure prior to obtaining a *Faretta* waiver may not be strictly required, it is best practice to do so to better guarantee the waiver is knowingly and voluntarily given. (See *People v. Jackio, supra*, 236 Cal.App.4th at p. 455 ["By so advising, the trial court puts the defendant on notice that, by representing himself, he is risking imposition of that maximum possible punishment"].) However, here the record as a whole serves to demonstrate that

defendant understood his maximum exposure; the trial court's failure to advise him at the time of his waiver of his right to counsel did not invalidate that waiver.

DISPOSITION

The judgment is affirmed.

/s/
_____
Duarte, Acting P. J.

We concur:


/s/
_____
Renner, J.


/s/
_____
Krause, J.

11