Filed 2/22/24  P. v. Serrano CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>ONOFRE SERRANO,<br><br>　　Defendant and Appellant. | B325319<br><br>(Los Angeles County<br>　Super. Ct. No. NA115520) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Henry J. Hall, Judge.  Affirmed.

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Gary A. Lieberman, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant entered a bar after it had closed to the public and threw a bar stool and tables at a security guard. When the security guard tried to subdue him, the defendant stabbed the guard four times before fleeing. Prior to the preliminary hearing, the defendant waived his right to counsel. Later, due to defendant's disruptive behavior at a pretrial hearing, the court appointed trial counsel. The jury convicted defendant of two counts of assault with a deadly weapon. On appeal, defendant contends he did not knowingly waive his right to counsel prior to the preliminary hearing. He also claims the trial court erred in excluding medical records of his neck and spine injuries. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 26, 2020, defendant and appellant Onofre Tommy Serrano (Serrano) went to the R Bar in Long Beach, California. An unarmed security guard employed by R Bar, D'Angelo Darby (Darby), told Serrano to leave the bar because he had harassed a female employee. Serrano became angry and pulled out a knife before leaving.

Serrano returned to R Bar on October 5, 2020. Darby recognized Serrano and told him to leave. Serrano became angry and challenged Darby to a fight. Serrano left the bar after other patrons intervened.

Hours later, shortly before 3:00 a.m. on October 6, Serrano returned to the bar. At that time, the bar was closed and the employees were cleaning up. Upon seeing Darby, Serrano became angry and threw a barstool. When Darby approached Serrano to subdue him, Serrano threw two bar tables at him. Darby eventually reached Serrano and punched him in the face. A fight ensued, and in the melee Serrano pulled a knife from his pocket, stabbing

2

Darby four times. Darby suffered wounds to his forearm, bicep, and the back of his head. Serrano then fled the bar. Darby was transported by paramedics to the hospital, where he received treatment for his wounds.

Serrano was initially charged with attempted murder (Pen. Code, §§ 664/187, subd. (a), count 1)[1] and assault with a deadly weapon, to wit, a barstool and table (§ 245, subd. (a)(1), count 2).

A. *Arraignment on Complaint*

On February 24, 2021, the trial court called the case for arraignment. The court appointed counsel to represent Serrano. Serrano waived arraignment and the reading of the complaint. The court entered pleas of not guilty on both charges.

B. *Waiver of Counsel*

On March 16, 2021, Serrano appeared in court and requested the court's approval to waive his right to counsel and appear in propria persona. Serrano submitted a form waiving his right to counsel under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*). The trial court conducted an extended inquiry of Serrano before accepting his waiver. As part of that discussion, Serrano indicated he was 50 years old and held a college degree in the administration of justice. He also indicated he previously represented himself in a criminal case and had obtained a dismissal.

The trial court proceeded to advise Serrano of his rights and the dangers of self-representation. Specifically, the court warned Serrano that if he represented himself, he would be without the assistance of an attorney and would be opposed by an experienced district attorney. The trial court

---

[1]     All further unspecified statutory references are to the Penal Code.

3

warned Serrano he would not receive special consideration or assistance as a self-represented party. Serrano was also told he would conduct his own trial, make his own motions, and be solely responsible for all work at all stages of the proceedings. The court additionally informed Serrano that he could change his mind and request a lawyer at any time, and an attorney would be appointed to represent him.

As part of this colloquy, Serrano told the court he understood "what the crime and the charge is, any possible legal defenses, the intents that needs [*sic*] to be proved, both general and specific intent, what defenses [he] may have, what facts need to be proven for [him] to be found guilty, and what are the sentencing options and pre- and post-trial motions." The trial court also cautioned Serrano that his pro per status would be revoked if he was disrespectful toward the judge or committed misconduct in court.

The trial court made one final effort to convince Serrano to accept counsel: "One last pitch. And I do this to every pro per case. It is really hard to represent yourself as pro per. . . . So I am going to make a pitch to ask you not to go pro per, but if you want to do that, I will respect that decision and let you go pro per. [¶] Would you like to have a lawyer or would you like to go pro per, sir?" Serrano responded, "I would like to exercise my *Faretta* rights, Your Honor."

The trial court accepted Serrano's waiver and ruled he could proceed in propria persona. The court then discussed the preliminary hearing, stating "You just want to fight this case, right? It is a life case, right? You have a prelim date on April 6. Would you like to exercise that right to have your preliminary hearing on April 6th?" In response, Serrano stated he needed more time to file a motion and prepare his case and agreed to waive his right to a preliminary hearing on that date.

4

At subsequent hearings, the trial court repeatedly advised Serrano of the dangers of self-representation and implored him to accept counsel. For example, at an October 26, 2021, hearing, the trial court cautioned Serrano that "[t]his is the last legal advice I'm going to give you. [¶] If you want to represent yourself and go to prison that's fine with me, but you have fundamental misunderstandings about the law." The court also stated "again, I want to urge you to get counsel."

On November 8, 2021, the court again encouraged Serrano to accept counsel, stating "every time we come to court I urge you to get counsel." The court stated that Serrano was not an effective advocate, warning "you created these problems that are going to come back and haunt you at trial. And I'm trying to warn you again you may want to have counsel in this case." The court also noted "I have offered you counsel on innumerable occasions and you turned it down."

At a November 30, 2021, hearing the court again reminded Serrano of the difficulties of self-representation and reminded him that he had "stand-by counsel who I'm happy to appoint at any time." Similarly, on June 7, 2022, the trial court cautioned Serrano "I've told you 100 times that in this case in particular being in pro per is not wise." The court pleaded with Serrano to accept counsel, saying, "And, Mr. Serrano, again, I don't know how to say this exactly. If I felt that there was nothing for you to gain by having an attorney represent you in this case I wouldn't urge you as much as I do to be represented by counsel, but this is a case that could go a number of different ways. And having the guiding hand of an experienced defense lawyer would help you enormously in this case. [¶] The stakes for you are high. They don't have to be as high as they are. And, like I said, an experienced attorney could well assist you and make this case a lot better than the way I see it

going right now. [¶] Like I said, I'm interested in seeing a just result in this case happen and I don't want to see that sacrificed." In response, Serrano affirmed that he was sure he wanted to continue to represent himself.

C.      *Preliminary Hearing*

Serrano's preliminary hearing was held on July 12, July 21, and August 9, 2021. At the preliminary hearing, Serrano testified he was employed as a legal document assistant. He stated he had certificates in the administration of justice from Long Beach City College and in paralegal studies from Los Angeles Trade Tech College.

He testified that on October 5, 2020, he went to a friend's house to have a drink and "had many drinks throughout the night." That was all he could remember of October 5. He said he woke up on October 6 experiencing pain in his arms, back, and neck but did not have any memory of returning to the R Bar on October 5. He could not recall his fight with Darby because he was intoxicated and unconscious. He also testified about medical issues concerning his neck and back, including surgeries he underwent in the month after his altercation with Darby. Serrano contended his neck was fractured by Darby. He also submitted his medical records from USC Medical Center.

After resting his case, Serrano stated he was asserting the "affirmative defenses of unconsciousness, self-defense, third-party culpability, outrageous government conduct, and selective enforcement." The court found his defenses lacked "any scintilla of credulity whatsoever" and stated that Serrano had "wasted this court's time" and "made a mockery of the justice system." The court concluded there was sufficient evidence to hold Serrano to answer on the charges against him.

6

D.    *Arraignment on Information*

Following the preliminary hearing, an information was filed on August 23, 2021, charging Serrano with one count of attempted murder (§§ 664/187, subd. (a), count 1) and one count of assault with a deadly weapon (§ 245, subd. (a)(1), count 2).  The information also alleged Serrano had one prior serious felony conviction, which constituted a "strike" within the meaning of sections 667, subdivision (d) and 1170.12, subdivision (b).  Circumstances in aggravation were also alleged under California Rules of Court, rule 4.421.  The trial court subsequently dismissed count 1 under section 1118.1, and the information was amended to add count 3 for assault with a deadly weapon, a knife, which included a great bodily injury enhancement (§§ 245, subd. (a), 12022.7, subd. (a)).

On September 10, 2021, the trial court arraigned Serrano on the information.  Serrano pled not guilty to the charges against him.

E.    *Court's Revocation of Self-Representation*

At a June 30, 2022 hearing, Serrano sought to replace his investigator for alleged failures to do the work Serrano required to prepare his defense.  Serrano became angry during the hearing and hurled expletives at his investigator.  Serrano, who claimed to be confined to a wheelchair, also got up from his wheelchair and approached the investigator.  In response, the trial court revoked Serrano's pro per status and appointed stand-by counsel to represent him.

F.    *Pretrial Motions*

Before trial, the prosecution filed a motion to exclude "any reference to irrelevant evidence pertaining to the defendant's alleged neck and spine

7

injury and hospital treatment." The prosecution argued Serrano's medical treatment occurred after his altercation with Darby and was not relevant to any of his defenses. At the hearing on the prosecution's motion, Serrano's counsel did not oppose the prosecution's request to exclude the evidence and stated he was not going to ask Serrano any questions about his medical condition. The trial court granted the motion, stating "He testified at length [at the preliminary hearing] about his physical injuries. My inclination would be to exclude all that as being irrelevant since they seem to have an independent source, but having read the preliminary hearing transcript I doubt very seriously, even if I order Mr. Serrano not to mention that, he's going to. It's going to be a blurt-out. [¶] And if that happens I would allow him to be impeached with the medical records showing that his injuries are a result of a degenerative disease and a bullet wound which he has to explain I assume."

G.    *Trial*

Serrano was represented at trial by his appointed counsel. In his opening statement, Serrano's counsel laid the groundwork to claim self-defense. Counsel argued Darby had escalated a minor disturbance to a physical fight by throwing the first punch. Counsel also highlighted the significant size difference between Serrano, who weighed approximately 170 pounds, and Darby, who weighed nearly 400 pounds. He claimed the surveillance video would show Serrano flailing wildly under Darby with Darby's hands around his neck.

### 1. *Serrano's Testimony*

Serrano testified at trial against the advice of counsel. Serrano went to R Bar on October 5 to meet with friends. He admitted he got into a verbal dispute with Darby before leaving the bar. He returned to the bar a few hours later, at around 3:00 a.m., again trying to see his friends. When he looked into the bar, he saw Darby and assumed Darby was blocking him from seeing his friends. He was angry at Darby for kicking him out of the bar on September 26 and October 5. On seeing Darby, he became enraged and threw a barstool. He was not trying to hit anyone with the stool.

At that point Darby approached him and Serrano threw bar tables at Darby to ward him off. The tables did not stop Darby, who reached Serrano and threw the first punch. Darby's initial punch rendered Serrano unconscious. He had no recollection of his fight with Darby aside from what he saw on the surveillance video. He was eventually able to break free and leave the bar.

On cross-examination, the prosecution impeached Serrano with his preliminary hearing testimony where he claimed to have no recollection of returning to R Bar on October 5. When asked at trial if he admitted to stabbing Darby, Serrano responded, "Darby put my head in a headlock and fractured my neck." The court struck the answer as nonresponsive. When the prosecution asked if he stabbed Darby, Serrano stated, "I stabbed him regarding—after he fractured my neck." The court struck the second half of the answer as non-responsive.

On redirect, counsel asked Serrano why he stabbed Darby. Serrano answered, "Because he put my head in a headlock and fractured my neck." The court intervened, telling counsel, "you were warned about that. He was warned about that. That opens the door. [¶] . . . You asked the question

9

and he gave an answer he wanted to. And I'm going to tell the jury it's not true." The court addressed the jury, stating, "Ladies and gentlemen of the jury, the law allows the court to take judicial notice of certain facts. [¶] I'm going to take judicial notice of the fact right now that Mr. Serrano's neck injuries were the result of, A, a congenital issue and, B, he has a bullet lodged there. It has nothing to do with D'Angelo Darby."

### 2. *Defense Closing Argument*

At closing argument, Serrano's counsel again argued that Serrano had acted in self-defense: "This was a case of self-defense. It's unfortunate that Mr. Darby suffered those injuries, but he chose to go after Tommy Serrano. Up until that point all Mr. Serrano had done was break some bottles for which he would have been liable. Vandalism. [¶] They could have sued him." He again painted Darby as the aggressor who wanted to "shut [Serrano's] big mouth up. So he hit him. Mr. Serrano defended himself."

### 3. *The Verdicts*

The jury found Serrano guilty on both counts of assault with a deadly weapon. It also found true the allegations that he had personally inflicted great bodily injury on both counts.[2]

The court proceeded to trial on the prior conviction allegation and aggravating circumstances. The jury returned a verdict finding Serrano had been previously convicted of a serious felony (carjacking) and found true the alleged circumstances in aggravation.

---

[2] The court later dismissed the great bodily injury enhancement with respect to count 2, finding "[t]he attack of the barstools and tables did not result in great bodily injury to the victim."

F.    *Sentencing and Post-Trial Motions*

After the jury returned its verdicts, Serrano moved for a new trial based, in part, on a claim that the jury failed to adequately deliberate the case. The court noted the jury deliberated for "about 48 minutes." However, the court denied the motion, finding the brief deliberation was not noteworthy as "The case against Mr. Serrano here was overwhelmingly strong." The court noted the video evidence alone "demonstrated Mr. Serrano's guilt beyond any reasonable doubt." The court also noted that Serrano's trial testimony "was obviously inconsistent with other statements that he had made and inconsistent with the physical and video evidence." The court pointed out Serrano seriously damaged his credibility with the jury by walking off the witness stand and back to his seat without assistance, despite claiming to be confined to a wheelchair.

The court then proceeded to sentencing. The court began by noting Serrano's history of self-representation and the court's subsequent revocation of that right. The court also stated, "On June 30th the court was advised by custody staff that Mr. Serrano had intended to, quote, 'break,' end quote, the appointed investigator apparently in the hopes of forcing a withdrawal of that investigator and further delay of this trial. [¶] I was also advised, again by custody staff, that the defendant intended to waste as much of the court's time as humanly possible to intentionally irritate the court. [¶] Additionally, the defendant had a history of refusing to come to court. And allowing him to remain self-represented, knowing that he intended to disrupt the proceedings of the court, was, in essence, giving him total control over the proceedings."

The trial court then selected count 3, the assault with a knife, as the principal term and sentenced Serrano to the high term of four years, doubled

11

to eight due to the true finding of the prior strike. The court added three years to this sentence pursuant to the great bodily injury allegation. On count 2, the court sentenced Serrano to a consecutive term of two years, calculated as one-third of the mid-term of three years, then doubled to two years because of the prior strike. Serrano's aggregate sentence is 13 years in state prison.

G.  *Appeal*

Serrano filed a timely appeal of the judgment against him.

## DISCUSSION

A.  Faretta *Waiver*

Serrano contends the trial court erred in permitting him to represent himself under *Faretta* without first orally advising him of the maximum potential prison sentence he faced if convicted. He argues that the absence of this specific admonition invalidates the waiver of his right to the assistance of counsel under the Sixth Amendment to the United States Constitution.

1.  *Legal Standards*

A defendant seeking to represent himself "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' [Citation.]" (*Faretta, supra,* 422 U.S. at p. 835.) "No particular form of words is required in admonishing a defendant who seeks to waive counsel and elect self-representation." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1070.) Rather, "the test is whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including

12

the risks and complexities of the particular case." (*Ibid*.; accord, *People v. Lawley* (2002) 27 Cal.4th 102, 140; *People v. Marshall* (1997) 15 Cal.4th 1, 24.)

A valid *Faretta* waiver requires "'a finding that the waiver is knowing and voluntary, i.e., the accused understands the significance and consequences of the decision and makes it without coercion.'" (*People v. Frederickson* (2020) 8 Cal.5th 963, 1002 (*Frederickson*.)  To support such a finding, a trial court must "inform the defendant in general terms of the most common disadvantages" of self-representation.  (*Id.* at p. 1003.)  "'The defendant "should at least be advised that: self-representation is almost always unwise and that the defense he conducts might be to his detriment; he will have to follow the same rules that govern attorneys; the prosecution will be represented by experienced, professional counsel who will have a significant advantage over him in terms of skill, training, education, experience, and ability; the court may terminate his right to represent himself if he engages in disruptive conduct; and he will lose the right to appeal his case on the grounds of ineffective assistance of counsel.  [Citation.] In addition, he should also be told he will receive no help or special treatment from the court and that he does not have a right to standby, advisory, or cocounsel."'" (*People v. Ruffin* (2017) 12 Cal.App.5th 536, 544 (*Ruffin*).) Before granting a defendant's request for self-representation, courts frequently require defendants to sign written forms, including such admonitions. (See, e.g., *id.* at p. 541; *Frederickson, supra*, at p. 1004.)

In *Ruffin*, this court previously noted "there is a split of authority in California as to whether the court must also specifically advise the defendant of the maximum penal consequences of conviction" before accepting a

defendant's *Faretta* waiver. (*Ruffin, supra*, 12 Cal.App.5th at p. 544.) In *People v. Bush* (2017) 7 Cal.App.5th 457, our colleagues in the First District held advisement of penal consequences was not essential to a valid *Faretta* waiver. However, in *People v. Jackio* (2015) 236 Cal.App.4th 445 (*Jackio*), our colleagues in the Third District came to the opposite conclusion and determined the court must advise the defendant of the maximum potential punishment when taking a *Faretta* waiver. The *Ruffin* court declined to decide the issue as it found that merely giving a defendant a *Faretta* form and stating generally that it was unwise to represent himself was insufficient to constitute a valid waiver. (*Ruffin, supra*, 12 Cal.App.5th at pp. 545–547.)

Where a defendant proceeds in propria persona at a preliminary hearing but is represented by counsel at trial, any alleged error in denying defendant counsel at the preliminary hearing is reviewed under the standard of *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*). (*People v. Boulware* (1993) 20 Cal.App.4th 1753, 1757.) Under this standard, "the error is reversible unless harmless beyond a reasonable doubt." (*Ibid*; accord *People v. Wilder* (1995) 35 Cal.App.4th 489, 500–502 (*Wilder*) [applying *Chapman* analysis to invalid *Faretta* waiver].) Our California Supreme Court has similarly assumed, without deciding, that a deficient *Faretta* waiver may be harmless under *Chapman* if the People show beyond a reasonable doubt that: (1) the defendant would have waived counsel even if he received adequate warnings; or (2) the outcome would have been no more favorable to the defendant even had he elected to be represented by counsel. (*People v. Burgener* (2009) 46 Cal.4th 231, 244–245 (*Burgener*).)

2.      *Serrano's* Faretta *Waiver was Knowing and Voluntary*

14

It is uncontested that at the time Serrano offered his *Faretta* waiver, he was facing a maximum potential prison sentence of 29 years. It is also undisputed that the court did not advise Serrano of this fact when engaging in a colloquy with Serrano before accepting his waiver. However, in questioning Serrano, the trial court specifically asked if he was aware of the potential sentencing options he faced, and Serrano confirmed that he was. The court also informed Serrano in general terms of the most common disadvantages of self-representation, including that an experienced attorney would represent the prosecution and that Serrano would not be entitled to any special treatment by virtue of his pro per status. The record indicates Serrano had training and experience as a paralegal and legal document assistant and obtained a degree in the administration of justice. He previously represented himself in a criminal action, which had been dismissed. Before accepting his *Faretta* waiver, the trial court also pleaded with Serrano to accept counsel, which Serrano refused.

In addition, shortly after accepting his waiver, the court advised Serrano he was facing a "life case." Courts have recognized that subsequent advisements of potential sentencing can cure any defect in the original *Faretta* colloquy. (See e.g. *People v. Conners* (2008) 168 Cal.App.4th 443, 447–449, 455 [*Faretta* waiver valid where defendant was not advised of his maximum exposure until two weeks after the court granted his *Faretta* motion].) Serrano argues that because the trial court inaccurately characterized the case as a "life case," this warning was insufficient. We disagree.

In referring to the case as a "life case," the trial court stressed the severity of Serrano's potential punishment. We note Serrano was 50 years old at the time he gave his *Faretta* waiver. A 29-year prison sentence would

15

mean he might spend the remainder of his life in prison. While the trial court's characterization of the case as a "life case" was not technically accurate, it did serve to advise Serrano that, if convicted, he could spend a significant portion of his remaining years in prison.

The court's holding in *Jackio* was premised on the notion that a defendant must appreciate the potential consequences of waiving counsel. The *Jackio* court concluded the trial court must "advise a defendant desiring to represent himself at trial of the maximum punishment that could be imposed" if the defendant is found guilty. (*Jackio, supra*, 236 Cal.App.4th at pp. 454–455.) "By so advising, the trial court puts the defendant on notice that, by representing himself, he is risking imposition of that maximum possible punishment. The defendant who decides to represent himself after this advisement proceeds with his "'eyes open'" and understands the dangers of self-representation, at least with respect to the possible punishment. [Citations.] Neither the Constitution nor interpretive case law requires more." (*Ibid*.)

On the record before us, we find Serrano was on notice of the severity and magnitude of the potential punishment he faced if found guilty and proceeded to waive counsel with his eyes open. We, therefore, find that the trial court did not err in accepting Serrano's *Faretta* waiver and allowing him to proceed—temporarily—in propria persona.

2.      *Any Error in the Court's* Faretta *Colloquy was Harmless*

Even if we were to assume the trial court erred in not advising Serrano that he faced a potential sentence of 29 years in prison, we find the error to

16

be harmless under either test put forth by our California Supreme Court in *Burgener*.

### a. *Serrano Would Have Waived Counsel Even if Specifically Advised of his Maximum Potential Sentence*

Before granting Serrano's *Faretta* waiver, the trial court pleaded with Serrano to utilize appointed counsel. Even after accepting the waiver, the court repeatedly reiterated Serrano was making a mistake by representing himself and encouraged him to accept attorney representation. The trial court went so far as to warn Serrano that the defenses he asserted at his preliminary hearing "lack[ed] any scintilla of credulity whatsoever" and that "The stakes for you are high. They don't have to be as high as they are. And, like I said, an experienced attorney could well assist you and make this case a lot better than the way I see it going right now." Yet Serrano remained steadfast in his refusal to accept counsel and insisted on representing himself. We are convinced Serrano would have waived counsel even if specifically informed that his maximum potential sentence was 29 years in prison.

There is also ample evidence in the record to suggest Serrano's *Faretta* waiver was motivated by a desire to abuse and delay the judicial process. In *Wilder*, the court applied the *Chapman* harmless error standard and found "Nothing would have changed had defendant been advised of the dangers of self-representation" because the defendant had abused his right to self-representation in the hopes of creating reversible error on appeal. (*Wilder, supra,* 35 Cal.App.4th at p. 502.) The *Wilder* court noted *Faretta* "'held generally that a defendant may represent himself. It did not establish a *game* in which defendant can engage in a series of machinations, with one

17

misstep by the court resulting in reversal of an otherwise fair trial.'" (*Id.* at p. 503, quoting *People v. Clark* (1992) 3 Cal.4th 41, 115.)

There is substantial evidence in the record that Serrano abused his right to self-representation. At Serrano's sentencing hearing, the trial court noted "custody staff" had advised the court that Serrano engineered disputes with his investigator in the hope of forcing the investigator to withdraw and delay the trial. The court also noted it was advised Serrano had a history of refusing to come to court and "intended to waste as much of the court's time as humanly possible to intentionally irritate the court." This is consistent with the trial court's observation that Serrano "wasted this court's time" and "made a mockery of the justice system" at the preliminary hearing.

We find beyond a reasonable doubt that Serrano would have waived his right to counsel even if he had been specifically advised at the time of his original *Faretta* waiver that he was facing a potential sentence of 29 years in prison.

b.    *Serrano Would Not Have Obtained a More Favorable Result with Counsel*

We also find Serrano would not have obtained a more favorable result at trial even if represented by counsel at his preliminary hearing.

Serrano argues he would have raised a different theory of defense at the preliminary hearing. Serrano now asserts Darby escalated the fight to lethal force by placing him in a headlock. Serrano claims he stabbed Darby in an effort to protect his compromised neck. He contends that the trial court's acceptance of his *Faretta* waiver effectively denied him the opportunity to present this defense at the preliminary hearing. This argument defies reason as Serrano testified at the preliminary hearing and

18

trial that he was unconscious at the time he stabbed Darby and had no memory of the fight. If Serrano had no recollection of the encounter, then regardless of whether he was represented by counsel, he would not have been able to truthfully attest that he stabbed Darby because he was worried about further injury to his neck.

At trial, Serrano testified against the advice of his counsel, simultaneously changing certain testimony from his preliminary hearing and claiming the testimony he gave at the preliminary hearing was true. Notably, at both the preliminary hearing and trial, Serrano testified that he was unconscious when he stabbed Darby. If Serrano offered this testimony at trial while represented by counsel, we can find no basis to conclude that he would have offered contrary testimony if he had been represented by counsel at his preliminary hearing.

Serrano appears to be arguing—though he does not say so directly—that he would have changed his story and committed perjury at the preliminary hearing and trial if he had been represented by counsel earlier. This argument lacks merit.

We also note this theory of self-defense, offered for the first time on appeal, would have required Serrano to admit that he had a preexisting neck injury before his altercation with Darby. Yet Serrano steadfastly refused to acknowledge a preexisting injury and repeatedly claimed that Darby was the sole cause of his neck injury. At the preliminary hearing and trial, Serrano insisted on asserting that Darby fractured his neck despite his own medical records indicating he suffered from pre-existing conditions.

Even when represented by counsel, Serrano refused to acknowledge his neck injury was caused by the combination of a preexisting congenital condition and a bullet lodged in his neck. At trial, his counsel asked him why

19

he stabbed Darby. Rather than assert that he feared for his compromised neck and spine, Serrano instead claimed that Darby fractured his neck. We find no reasonable basis to conclude a different result would have followed if counsel had asked that question of Serrano at the preliminary hearing.

Furthermore, as the trial court noted, the evidence of Serrano's guilt was overwhelming. The fight was captured on security video, which was shown to the jury. The trial court also noted that Serrano's conduct at trial seriously damaged his credibility by giving inconsistent statements and walking in front of the jury with no assistance while purporting to be confined to a wheelchair. We also note the jury returned its verdict in approximately 45 minutes, a fact which the trial court attributed solely to the overwhelming evidence of Serrano's guilt.

For these reasons, we find beyond a reasonable doubt that Serrano would not have obtained a more favorable result if he had been represented by counsel at the preliminary hearing.

### 3. *Arraignment*

Serrano argues the trial court also erred in failing to readvise him of his right to counsel at the time he was arraigned on the information following the preliminary hearing. It is undisputed that the court was required to readvise Serrano of his right to counsel at the time of his arraignment, regardless of whether he previously waived that right. "[T]he superior court is required to advise a defendant of his or her right to counsel in superior court whenever the defendant appears without counsel at the arraignment, even when the defendant previously has been advised of the right to counsel and has expressed an intention to waive counsel throughout the proceedings." (*People v. Crayton* (2002) 28 Cal.4th 346, 361 (*Crayton*).) A trial court's

20

failure to do so is analyzed under the harmless error standard outlined in *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (*Crayton*, at p. 350, fn. 1.) Where a defendant was repeatedly advised "of the risks of self-representation" and demonstrated an "unwavering" desire to represent himself, the failure to specifically advise the defendant of his right to counsel at his arraignment is harmless error. (*Id.* at p. 366.)

As set forth above, Serrano was steadfast in his desire to represent himself despite extensive warnings from the court that he was putting himself in jeopardy by doing so. Accordingly, any error in failing to readvise Serrano of his right to counsel at the time of his arraignment on the information was harmless under *Watson* and *Crayton*.

B.    *Evidentiary Ruling*

Before trial, the prosecutor moved to exclude "any reference to irrelevant evidence pertaining to the defendant's alleged neck and spine injury and hospital treatment." The court granted the motion, stating if Serrano attempted to testify that Darby broke his neck during the fight, he would allow Serrano to be impeached with his medical records showing the injury was the result of a congenital issue and a bullet lodged in his neck. At the time of this ruling, Serrano was represented by counsel who made no objection. On appeal, Serrano also contends the trial court erred in excluding evidence of his neck injury. We find Serrano has forfeited this issue.

1.    *Serrano Has Forfeited this Issue on Appeal*

Counsel's failure to object to the trial court's ruling forfeited this issue on appeal. "As a general rule, a defendant's failure to object to an alleged

21

trial error relieves an appellate court of the obligation to consider the claim on review." (*People v. Arredondo* (2019) 8 Cal.5th 694, 710 (*Arredondo*).) "The reason for this rule is to allow the trial court to correct its errors and 'to prevent gamesmanship by the defense.' [Citation.]" (*Ibid*.) Moreover, "a judgment may not be reversed for the erroneous exclusion of evidence unless 'the substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means.'" (*People v. Anderson* (2001) 25 Cal.4th 543, 580, quoting Evid. Code, § 354, subd. (a).) However, a claim of error in the exclusion of evidence will not be deemed forfeited on appeal if the appellant makes a showing that it would have been futile to object or make an offer of proof. (*People v. Wilson* (2008) 44 Cal.4th 758, 793 ["A litigant need not object, however, if doing so would be futile"]; Evid. Code, § 354, subd. (b).)

It is undisputed here that no objection was made to the trial court's exclusion of this evidence, nor was any offer of proof made as to the substance, purpose, or relevance of the evidence. Serrano has thus forfeited any claim of error in the exclusion of this evidence. Serrano argues the issue was not forfeited because it would have been futile for counsel to object to the court's ruling. Serrano's argument relies exclusively on the assertion that the court gave "forceful admonitions" in making its rulings, which he now claims justified a reasonable belief that "any objection to the court's ruling or even further discussion would have been futile." We find this characterization unsupported by the record.

In making its ruling before trial, the court stated that if Serrano claimed Darby fractured his neck, the court would allow the prosecution to impeach Serrano with his medical records to establish Serrano's injuries stemmed from conditions that predated the altercation with Darby. This in

22

no way suggests that it would have been futile for counsel to object or clarify the court's ruling to allow Serrano himself to introduce evidence regarding his pre-existing medical condition. If anything, it indicates that the trial court was willing to allow the jury to hear such evidence. We, therefore, find Serrano has not established it would have been futile to object, and thus he has forfeited any claim of error concerning the trial court's ruling.

2. *Ineffective Assistance of Counsel*

Serrano also claims that to the extent this issue is deemed forfeited, his counsel's failure to object at trial constituted ineffective assistance of counsel. This alternative argument does not fare any better.

To prevail on a claim of ineffective assistance of counsel, Serrano must establish that his "counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms." (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*).) In determining whether counsel's performance was deficient, we "defer[] to counsel's reasonable tactical decisions" and presume that "counsel acted within the wide range of reasonable professional assistance." (*Ibid.*) Serrano faces a heavy burden on appeal as "deciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance." (*People v. Hillhouse* (2002) 27 Cal.4th 469, 502.) To succeed, Serrano "'must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."'" (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1243, quoting *Strickland v. Washington* (1984) 466 U.S. 668, 689.) His ability to make this showing is particularly difficult in these circumstances as "this is a direct appeal and the record does not

disclose the reason for counsel's failure to object." (*Arredondo, supra,* 8 Cal.5th at p. 711.)[3]

To carry his burden, Serrano must show either "(1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*Mai, supra,* 57 Cal.4th at p. 1009; accord *People v. Hoyt* (2020) 8 Cal.5th 892, 958.) On appeal, the record does not affirmatively disclose that counsel had no rational tactical purpose for choosing not to object to the trial court's ruling. Serrano has made no argument to the contrary. Serrano also does not claim his counsel was ever asked why he did not object, and the record does not show otherwise. This leaves only the question of whether Serrano has shown there was no satisfactory explanation for counsel's choice. We find he has not made this showing.

Rather than address counsel's potential reasons for not objecting, Serrano's argument focuses exclusively on the reasons why counsel should have objected. In particular, Serrano takes great pains to discuss how his history of neck injury could have been relevant to his claim of self-defense. But the question for us is not whether there was a potentially viable alternative theory of self-defense that counsel could have presented; instead, we must determine whether Serrano has established there is no satisfactory explanation for counsel's tactical decision not to object. The record here

---

[3] For this reason, courts have recognized that "except in those rare instances where there is no conceivable tactical purpose for counsel's actions, claims of ineffective assistance of counsel should be raised on habeas corpus, not on direct appeal. [Citation.] This is particularly true where, as here, the alleged incompetence stems from counsel's failure to object." (*People v. Lopez* (2008) 42 Cal.4th 960, 972.)

shows Serrano's counsel had legitimate tactical reasons for not objecting to the trial court's ruling.

At trial, counsel's theory of self-defense was based on uncontested facts in the record, primarily the significant height and weight difference between Serrano and Darby. Counsel also argued that Darby himself unnecessarily escalated a minor disturbance into a physical fight by going out of his way to approach and strike Serrano rather than simply calling the police to have Serrano removed from the premises. By contrast, if counsel had instead argued that Serrano feared for his life because of pre-existing medical conditions, the prosecution would have impeached Serrano with his prior testimony that he was unconscious at the time of the stabbing. In other words, counsel could not have proceeded with this new theory of self-defense at trial without damaging Serrano's credibility with the jury. Counsel could have reasonably determined this risk to be too great and made the strategic decision to proceed with a theory of self-defense that did not contradict his client's own testimony. As the court noted in denying Serrano's motion for a new trial, Serrano already faced significant problems with his credibility. Counsel could have made the reasonable choice not to add to them.

As there was a rational tactical reason for counsel's failure to object, Serrano's claim of ineffective assistance of counsel lacks merit.

//

//

//


## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

25

ZUKIN, J.

We concur:


CURREY, P. J.


COLLINS, J.